JOHNATHAN S. HENSLEY, on behalf of
himself and others similarly situated,

*Plaintiff*

v.

CITY OF CHARLOTTE, a North Carolina
municipal corporation.,

*Defendant*

Action No. 3:20-cv-482

## CLASS ACTION COMPLAINT
## (JURY TRIAL DEMANDED)

NOW COMES Plaintiff, on behalf himself and others similarly situated, and alleges and says:

### SUMMARY OF THE ACTION

### PARTIES

1.      Plaintiff Johnathan S. Hensley is a citizen and resident Mecklenburg County, North Carolina.

2.      Defendant City of Charlotte ("Defendant") is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina, located in Mecklenburg County, North Carolina.

3.      Defendant has, as one of its component parts, the Charlotte-Mecklenburg Police Department (CMPD).

4.     The CMPD is not capable of being sued because it is a component part of Defendant; however, Defendant is the proper entity to sue for any actionable DPPA violations committed by Defendant through its component, the CMPD.

5.     CMPD police officers are paid by Defendant.

6.     CMPD police officers are employees and agents of Defendant.

7.     Defendant is a "person" as that term is defined in 18 U.S.C. 2725(2) and as that term is used in 18 U.S.C. 2724(a).

## JURISDICTION AND VENUE

8.     This action arises under, and is brought pursuant to, the DPPA. Subject matter jurisdiction is conferred upon this Court by 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 as the action arises under the laws of the United States.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant is subject to personal jurisdiction in this District and therefore deemed to reside in this District for purposes of venue. 28 U.S.C. § 1391(b) and (c).

## FACTS

### Drivers' Licenses, Vehicle Registrations, and Department of Motor Vehicles

10.     The North Carolina Division of Motor Vehicles (NCDMV) is a "State department of motor vehicles" as that term is used in the DPPA.

11.     As used herein, the term "driver's license" refers to a permit to operate a motor vehicle issued by a State department of motor vehicles.

12.     North Carolina law, including N.C. Gen. Stat. § 20-7, requires any applicant for a North Carolina driver's license to give his full name, date

of birth, sex, mailing address, and residence address to the NCDMV. The NCDMV obtains this information in connection with motor vehicle records including driver's licenses.

13. The NCDMV assigns each licensed driver a license number.

14. A North Carolina driver's license number originates with NCDMV.

15. No person or entity other than NCDMV has any input into what license number will be assigned to a North Carolina licensed driver.

16. The NCDMV enters each driver's name, date of birth, address(es) and license number into its license database.

17. The NCDMV retrieves each driver's name, date of birth, address, and license number from its license database and prints that information onto each driver's license it issues. The NCDMV then sends the license to the driver.

18. A driver's license is a "motor vehicle record" as defined by 18 U.S.C. § 2725.

19. Plaintiff's driver's license was issued by NCDMV.

**The DMV-349 Accident Report**

20. North Carolina law, including Section 20-8(3) of the North Carolina General Statutes, requires a non-resident driver in North Carolina to have and possess a valid driver's license issued to the non-resident in her home state

21. Under N.C. Gen. Stat. § 20-4.01(33b), a reportable crash is one involving a motor vehicle that results in one or more of the following:

a. Death or injury of a human being.

3

b. Total property damage of one thousand dollars ($1,000) or more, or property damage of any amount to a vehicle seized pursuant to N.C. Gen. Stat. § 20-28.3.

22. The wreck described below was a reportable crash under G.S. 20-4.01(33b).

23. Under N.C. Gen. Stat. § 20-166.1(a) the driver of a vehicle involved in a reportable accident must notify the appropriate law enforcement agency of the accident.

24. Under N.C. Gen. Stat. § 20-166 the driver of a vehicle involved in a reportable crash must, if it is safe to do so, remain at the scene of the crash until a law-enforcement officer completes the investigation of the crash or authorizes the driver to leave.

25. Under N.C. Gen. Stat. § 20-166.1(e), law enforcement agencies in North Carolina, including the CMPD, are obligated to investigate reportable accidents which are reported to them, such as those accidents described below.

26. North Carolina law, in particular, N.C. Gen. Stat. § 20-29, requires any driver who is involved in a motor vehicle accident in North Carolina to produce his driver's license on request of a law enforcement officer. A driver's failure to do so is a crime. *Id.*

27. Law enforcement officers in North Carolina, including CMPD officers employed by Defendant, are required by law to use a standard form promulgated by NCDMV, known as a DMV-349, to record their investigations of reportable crashes, including those accidents described below.

28. When law enforcement officers complete the DMV-349 in connection with an accident investigation, they are obligated to comply with

4

the then-current edition of the Instruction Manual for the DMV-349 ("the Manual").

29.     Every sworn law enforcement officer in North Carolina, including all CMPD officers, must complete training, on completing the DMV-349 consistent with the Manual.

30.     At all relevant times, the Manual instructed and instructs law enforcement officers to record on the DMV-349 the names of drivers involved in an accident as follows: "Enter the driver's name **exactly as it appears on his/her driver's license.**" (Emphasis added).

31.     At all relevant times, including the time of each DPPA violation referred to below, CMPD officers have trained recruits on completing DMV-349s as required by the Manual.

32.     At all relevant times, CMPD officers have completed DMV-349s as required by the Manual.

33.     At the time of each DPPA violation referred to below, Defendant was under a duty to know, and did know, the contents of the Manual; and, Defendant's component part, the CMPD and its police officers, were required by law and by Defendant to comply, and did comply, with the above-described instructions contained in the Manual.

34.     When CMPD officers complete DMV-349 forms, they routine access either driver's licenses or the DMV database. Such officers obtain or verify driver's personal information from these sources, including drivers' names, addresses and driver's license numbers.

35.     When CMPD officers complete DMV-349 forms, they included the driver's license number of each involved driver on the report.

36.     When a CMPD officer retrieves a driver's name, address or driver's license number for purposes of investigating an accident or

completing a DMV-349, Defendant is an "authorized recipient" of the driver's personal information under 18 U.S.C. § 2721(b)(1) and (c).

37. The DMV-349 form contains a check box for each driver in which the law enforcement officer indicates whether the driver's address on the DMV-349 matches the address on the driver's license ("the Same Address Box").

38. Each CMPD officer has, at all relevant times, been trained not to check "Yes" for the Same Address Box on the DMV unless he has compared the address on the DMV-349 to either the driver's physical license or to the NCDMV database.

39. Accordingly, if the Same Address Box is checked "Yes," the CMPD officer has compared the address on the DMV-349 either to the address shown on the driver's license or to the address in the DMV database.

40. Where the Same Address Box is checked "Yes," the DMV-349 reveals information from a driver's motor vehicle record, namely the driver's address on the driver's license and in the DMV database.

41. Where the Same Address Box on a DMV-349 is checked "Yes," the DMV-349 pertains to Plaintiff's motor vehicle operator's permit. Such DMV-349 is a motor vehicle record as defined by 18 U.S.C. § 2725(1).

42. CMPD officers investigate tens of thousands of accidents per year and have done some for at least a decade.

43. The vast majority of the DMV-349 forms created by CMPD contain at least one driver's name, address, and driver's license number.

44. The vast majority of DMV-349 forms created by CMPD have the Same Address Box checked "Yes" for at least one driver.

**Defendant systematically discloses of personal information from motor vehicle records to persons who lack a permissible purpose under the DPPA.**

45.    At least as early as 2007 Defendant began making completed CMPD DMV-349 forms available to the public in the CMPD records division.

46.    Since at least 2007, Defendant has placed one or more copies of each DMV-349 recently received on the front desk of its records division such than anyone who comes into the division can view the information on each DMV-349. Defendant continues this practice currently.

47.    Defendant has known, since at least 2007, that many individuals and entities obtain copies of CMPD DMV-349s for marketing purposes.

48.    Defendant has known that individuals and businesses review each DMV-349 for the purpose of marketing.

49.    Since 2007, multiple people have come to the records division every business day to review each DMV-349 that is made available on the counter. On most, if not all, business days, one or more of those people reviews each DMV-349 for marketing purposes.

50.    Beginning in 2007, Defendant contracted with PoliceReports.US ("PRUS"), a company eventually purchased by LexisNexis Claims Solutions, Inc. ("LexisNexis").

51.    In its original contract with PRUS, and in renewals with PRUS and LexisNexis, Defendant required PRUS or LexisNexis to make DMV-349s completed by CMPD officers available on the internet via a website ("the Website").

52.    In said contracts, Defendant required PRUS or LexisNexis to make such DMV-349s available for individual purchase as well as for "bulk/subscription download." Defendant prescribed a pricing schedule for

7

both the individually purchase DMV-349s as well as the "bulk/subscription download" of DMV-349s.

53.     Defendant controls the means and methods by which PRUS/LexisNexis makes DMV-349s available via the Website.

54.     Defendant and PRUS/LexisNexis have agreed to make DMV-349s available on the Website and both Defendant and PRUS/LexisNexis have committed multiple overt acts in furtherance of that agreement. Notably, Defendant has configured its computer system to format DMV-349s and automatically upload them to PRUS/LexisNexis, and PRUS/LexisNexis operates the Website with allows internet users to search for and obtain DMV-349s.

55.     The Website has a search feature which freely allows any internet user to methodically search the Website to retrieve and view a copy of any DMV-349 for any accident investigated by the CMPD. For example, the DMV-349s can be searched by the date of the accident. So, to find every DMV-349 for every accident investigated by the CMPD in the month of July 2020, an internet user would simply have to do 31 searches—one for each day of the month. For each search the user would enter a date into the search box of the Website and the resulting search would provide a list, sorted by each driver's name as shown on that driver's license, of DMV-349s for the CMPD-investigated accidents that occurred on that date.

56.     At no time has Defendant redacted personal information, as defined by 18 U.S.C. § 2725, from DMV-349s made available either at the CMPD records division or via the Website.

57.     When Defendant discloses to third parties, via its records division or the Website, the driver personal information obtained for the purpose of

8

investigating an accident or completing a DMV-349, Defendant is redisclosing such personal information as defined by 18 U.S.C. § 2721(c).

58.     Under 18 U.S.C. § 2721(c), when Defendant rediscloses personal information from a motor vehicle record, via its records division or the Website,  it must record the identity of each person or entity to whom it rediscloses such information along with that person or entity's DPPA-permitted purpose for obtaining such information.

59.     At no time has Defendant ever required a person obtaining a DMV-349 either at its records division or via the Website to provide a permissible purpose under the DPPA. In fact, Defendant makes no effort whatsoever to determine whether a person who acquires personal information via a DMV-349 has a DPPA-permitted purpose of obtaining such information.

60.     To the contrary, Defendant has prohibited PRUS/LexisNexis from requiring purchasers of DMV-349s to provide a permitted purpose under the DPPA.

61.     At no time has Defendant or PRUS/LexisNexis maintained any records pursuant to 18 U.S.C. § 2721(c).

62.     Defendant has systematically disclosed the names, addresses, and driver's license numbers of hundreds of thousands of drivers, either via the CMPD records division or the Website. Defendant has disclosed those names, addresses and driver's license numbers without requiring a permissible purpose under the DPPA.

63.     At no time has Defendant maintained any records identifying the persons or entities that have received such personal information or the permitted purpose for which such recipient will use such information.

64.     Defendant know that the DMV-349s it disclosed and continues to disclose via the CMPD records division and the Website contain personal information from a motor vehicle record because, among other things:

a.     At all relevant times, Defendant expressly required (and continues to require) that its police officers in the CMPD complete the DMV-349 form for motor vehicle accidents by **copying from the driver's license** onto the DMV-349 the name of each involved driver **exactly as that driver's name appears on his or her driver's license or by auto-populating the address onto the DMV-349 from the DMV database;**

b.     On the vast majority of those DMV-349s, the investigating CMPD officer explicitly represented in writing that at least one driver's address shown on the DMV-349 **matched the address on his or her driver's license**. That fact could only have come from a review of the information on Plaintiff's driver's license or from a review of the information in a DMV database of driver's license information;

c.     The investigating CMPD officer copied the driver's license number into the proper field on the DMV-349. Defendant knew that each Plaintiff's driver's license number originated with, and could only have come from, a department or division of motor vehicles;

d.     The DMV-349 forms have a field for recording the restrictions shown on each driver's license. Defendant knew this field is routinely completed by its officers by copying

the restriction code directly from a driver's license. Driver's license restrictions could only originate as a record of a department of motor vehicles; and

e. Defendant's agent, the investigating CMPD officer, retrieved one or more driver's personal shown on the DMV-349 from a DMV database.

65. Upon information and belief, logs exist which show law enforcement access to DMV license records. Such logs identify, at minimum, the accessing officer, the date and time of the access, and the person whose record was accessed.

66. Defendant continues to publish on the Website all of the DMV-349 accident reports for traffic accidents investigated by the CMPD containing drivers' names, addresses and driver's license numbers. Moreover, Defendant persists in this practice despite having been asked to cease and desist from that practice. A copy of the **cease-and-desist letter,** which was mailed to, and received by, Defendant, is attached as **Exhibit 1**.

## Facts related to the Accident

67. On November 22, 2017, Plaintiff was driving a vehicle that was involved in a motor vehicle collision ("the Accident") caused by another driver. The Accident was a reportable crash as defined by N.C. Gen. Stat. § 20-4.01.

68. The Accident occurred within the City of Charlotte, so under G.S. § 20-166.1(a), the CMPD was the law enforcement agency with jurisdiction over the scene of the Accident, and the CMPD was the appropriate agency to investigate the Accident and complete the DMV-349 accident report described below, so Defendant sent one of its police officers to investigate the Accident.

69.     At the scene of the Accident, Plaintiff provided the responding CMPD police officer with his name and date of birth.

70.     Plaintiff did not provide either his driver's license number or the last four digits of his nine-digit zip code to the responding CMPD officer.

71.     The responding CMPD officer completed a DMV-349 ("the Report") for the Accident which contained Plaintiff's:

  a.     full name;

  b.     address including nine-digit zip code;

  c.     date of birth;

  d.     driver's license number; and

  e.     telephone number.

All of the above information is personal information as defined by 18 U.S.C. § 2725(3).

72.     Other than Plaintiff's name and date of birth, the responding CMPD officer obtained all of Plaintiff's information listed in paragraph 71 from the NCDMV's driver's license database.

73.     In addition, the responding CMPD officer checked "Yes" in the Same Address Box on the Report, indicating that Plaintiff's address shown on the Report was the same address shown on Plaintiff's driver's license

74.     Because the Report showed that Plaintiff's address on the Report matched the address on his license, the Report pertains to Plaintiff's motor vehicle operator's permit.

75.     The Report is a motor vehicle record as defined by 18 U.S.C. § 2725(1).

76.     Because the Report showed that Plaintiff's address on the Report matched the address on his license, the DMV-349 contains information "from a motor vehicle record" within the meaning of 18 U.S.C. § 2724(a).

12

77.    The CMPD police officer who investigated the Accident caused the Report to be filed with the CMPD records division, which, in turn, filed the Report with the NCDMV.

**Defendant disclosed Plaintiff's personal information to persons who lacked a permissible purpose.**

78.    As was its usual practice, Defendant placed one or more copies of the Report, which included Plaintiff's personal information, on the front counter of its records division.

79.    Defendant made, and continues to make, the Report available to the public in its records division.

80.    Soon after the Report was completed, Defendant disclosed the Report to one or more LexisNexis entities.

81.    Upon information and belief, within a few days after the Accident, Defendant uploaded and published a copy of the Report on the Website. Said DMV-349 contained Plaintiff's name, address, and driver's license number, as well as the explicit written representation that the address on the DMV-349 was the address on Plaintiff's driver's license. Plaintiff's address shown on the DMV-349 was copied directly from the NCDMV license database.

82.    Defendant published on its Website and made freely available to all internet users Plaintiff's name, address, and driver's license number shown on each DMV-349. But Defendant did more than just make the list of names available. Defendant, through its contract with PRUS/LexisNexis and the Website, in fact, disclosed Plaintiff's name, address and driver's license number to one or more internet users who obtained the name to use in targeted direct mail solicitation. Such disclosure(s) were for a purpose not permitted under the DPPA.

83.     Defendant published on its Website and made freely available to all internet users an image of the DMV-349 for the Accident. But Defendant did more than just make the DMV-349 available: Defendant, through its contract with PRUS/LexisNexis and the Website, in fact, disclosed the DMV-349 for each of the Accidents described above to one or more internet users who obtained the DMV-349 for the purpose of harvesting the names and addresses of the involved drivers and vehicles owners shown on that form, to use in targeted direct mail solicitation. Such disclosures were for a purpose not permitted under the DPPA.

84.     Defendant published and disclosed Plaintiff's name, address, and driver's license number obtained from a NCDMV record for a purpose not permitted under the DPPA, namely, solicitation.

85.     Defendant knew that the Report containing Plaintiff's information it disclosed via the CMPD records division and the Website contained personal information from a motor vehicle record because, among other things

    a.     At all relevant times, Defendant expressly required (and continues to require) that its police officers in the CMPD complete the DMV-349 form for motor vehicle accidents by **copying from the driver's license** onto the DMV-349 the name of each involved driver **exactly as that driver's name appears on his or her driver's license or by auto-populating the address onto the DMV-349 from the DMV database;**

    b.     The investigating CMPD officer explicitly represented in writing, on each DMV-349, that the Plaintiff's address shown on the DMV-349 **matched the address on his or**

**her driver's license**. That fact could only have come from a review of the information on Plaintiff's driver's license or from a review of the information in a DMV database of driver's license information;

c. The investigating CMPD officer copied Plaintiff's driver's license number into the proper field on the DMV-349. Defendant knew that each Plaintiff's driver's license number originated with, and could only have come from, a department or division of motor vehicles;

d. The DMV-349 for each of the Accidents has a field for recording restrictions on each Plaintiff's driver's license. Defendant knew this field is routinely completed by its officers by copying the restriction code directly from a driver's license. Driver's license restrictions could only originate as a record of a department of motor vehicles;

e. At all relevant times, Defendant knew and knows that its CMPD officers always copy onto DMV-349s the names and addresses of drivers from: (1) drivers' licenses; or (2) the computerized records from the NCDMV and that the CMPD officer investigating the Accident followed that procedure;

f. Defendant's agent, the investigating CMPD officer, retrieved Plaintiff's information from a DMV database;

86. Defendant continues to publish on the Report containing Plaintiff's name, addresses and driver's license number. Moreover, Defendant persists in this practice despite having been asked to cease and desist from

that practice. A copy of the **cease-and-desist letter,** which was mailed to, and received by, Defendant, is attached as **Exhibit 1**.

87.     Defendant has not required any person or entity to whom it disclosed Plaintiff's personal information on the Report to provide a DPPA-permitted purpose for obtaining that information.

## Defendant's prior knowledge of clearly established DPPA rights

88.     Since at least 2007, Defendant has its own legal department.

89.     Defendant's legal department employs at least 5 attorneys, all of whom are licensed to practice law in North Carolina.

90.     In 2016, Defendant's City Attorney was Defendant's highest-paid employee.

91.     Collectively, the attorneys in Defendant's legal department received compensation of more than $750,000 in 2016.

92.     If Defendant needs additional legal assistance, it has the ability to hire outside counsel.

93.     The DPPA has been in effect since 1994.

94.     Defendant has been aware of the DPPA since at least November 1, 2012.

95.     Defendant has been aware of the DPPA for more than 20 years.

96.     Since 1994, more than 100 reported judicial decisions have interpreted the DPPA.

97.     The Supreme Court of the United States has issued at least two opinions involving the DPPA: *Reno v. Condon*, 528 U.S. 141, (2000) and *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

98.     In *Maracich*, the Supreme Court held that "sending communications for the predominant purpose of solicitation is not a use of personal information exempt from DPPA liability under (b)(4)."

99.     On August 31, 2016, which was more than four years before this lawsuit was filed, Defendant received a letter asking Defendant to immediately cease and desist from the indiscriminate internet publishing of individuals' personal information which is protected by the DPPA.

100.    After August 31, 2016, Defendant continued (and still continues) to publish the images of DMV-349s on its Website; those images display the names and addresses of drivers and vehicle owners and are freely viewable by internet users.

101.    Defendant knows that attorneys (or their employees, agents, or vendors) perform searches on the Website for the primary purpose of obtaining (from DMV-349s displayed on the Website) names and addresses of drivers involved in motor vehicle accidents so that business solicitation letters can be sent to those drivers.

102.     Defendant knows that chiropractors (or their employees, agents, or vendors) perform searches on the Website for the primary purpose of obtaining (from DMV-349s displayed on the Website) names and addresses of drivers involved in motor vehicle accidents so that business solicitation letters can be sent to those drivers.

103.    Defendant's ongoing action of publishing Plaintiff's name and address from NCDMV records violates the clearly established statutory rights of Plaintiff under the DPPA which, at all relevant times, a reasonable person would have known and which Defendant has, in fact, known.

## CLASS ACTION ALLEGATIONS

104.   Plaintiff brings this action on behalf of the classes defined in the following paragraphs as:

      a.   All natural persons

      b.   listed as a driver on a DMV-349 completed by a CMPD officer within the Class Period;

      c.   which person's North Carolina driver's license number is shown on the DMV-349;

      d.   for which person the Same Address Box is checked "Yes"; and

      e.   who is not an Excluded Person as defined below.

105.   The following persons are excluded from the Class ("Excluded Persons"):

      a.   All counsel of record;

      b.   All employees of counsel of record;

      c.   All employees of the Court; and

      d.   All employees or officials of Defendant.

106.   The Class Period

107.   **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The members of each Class are so numerous that joinder of all is impractical. Upon information and belief, during the relevant time period, Defendant has knowingly and impermissibly disclosed the protected personal information from motor vehicle records of hundreds of thousands of individuals (who meet each of the above class definitions) by the indiscriminate publishing of DMV-349 reports in its records division and via the Website. The Class members' names and addresses are identifiable through documents and computer files maintained by Defendant.

18

108. **Existence and Predominance of Common Questions of Law and Fact** (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of each Class and predominate over the questions affecting only individual members. The common legal and factual questions include:

   a. Whether an DMV-349 in which the Same Address Box is checked "Yes" is a motor vehicle record;

   b. Whether Defendant, by displaying a Class member's name to a Website user, knowingly disclosed protected personal information from a motor vehicle record;

   c. Whether Defendant, by displaying a Class member's address to a Website user, knowingly disclosed protected personal information from a motor vehicle record;

   d. Whether Defendant, by disclosing an unredacted version of each Class member's DMV-349 knowingly disclosed information from a motor vehicle record for a purpose not permitted under the DPPA;

   e. Whether Defendant, because of its failure to comply with 18 U.S.C. § 2721(c) is estopped to deny, or is otherwise precluded from contesting, Plaintiff's contention that each Class member's information was obtained without a permissible purpose;

   f. Whether Defendant is estopped to deny, or is otherwise precluded from contesting, an individual Class member's claim that at least one item of his personal information on his DMV-349 came from his motor vehicle record; and

19

g. Whether Defendant is liable for the actions of PRUS/LexisNexis under an agency, ratification, or civil conspiracy theory.

109. **Typicality** (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claim is typical of the claim of each Class member. Plaintiff has the same claim for liquidated damages that he seeks for absent class members.

110. **Adequacy** (Fed. R. Civ. P. 23(a)(4)): Plaintiff is an adequate representative of the Class. His interests are aligned with, and are not antagonistic to, the interests of the Class members he seeks to represent; he has retained counsel competent and experienced in complex litigation, particularly the DPPA. He intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of the members of the Class.

111. **Predominance and Superiority** (Fed. R. Civ. P. 23(b)(3)): Questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The liquidated damages sought by each member are the same. However, the liquidated damages of each member of the Class are limited, such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts to require Class members to file thousands of individual lawsuits. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual

issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## COUNT I
## (LIQUIDATED DAMAGES FOR VIOLATION OF SECTION 2724(A) OF THE DPPA)

112.    The allegations contained in the paragraphs above are incorporated herein by reference.

113.    When the CMPD officers who completed the Report for the Accident, he obtained Plaintiff's personal information, in the form of his address and driver's license number from a motor vehicle record.

114.    Defendant is a "person" as that term is defined by 18 U.S.C. § 2725(b).

115.    Defendant knowingly disclosed Plaintiff's protected personal information from a motor vehicle record as described above.

116.    Plaintiff did not consent to allow Defendant to disclose personal information obtained from a motor vehicle record.

117.    When Defendant knowingly disclosed Plaintiff's protected personal information, Defendant lacked Plaintiff's express consent.

118.    Defendant knowingly disclosed Plaintiff's protected personal information, especially his address and driver's license number, from a motor vehicle record to one or more persons or entities who obtained the protected personal information from Defendant for the primary purpose of solicitation and who did then, in fact, use such protected personal information for the purpose of solicitation, and more specifically, for the purpose of targeting each Plaintiff as a wreck victim and then using each Plaintiff's name and

address to send one or more targeted direct mail solicitation letters to each Plaintiff at his or her home address.

119. Defendant obtained Plaintiff's name from a motor vehicle record and then displayed those names on the Website; when it displayed the names on the Website, Defendant knowingly disclosed each Plaintiff's personal information from a motor vehicle record.

120. Defendant obtained Plaintiff's address from a motor vehicle record and then made those names and addresses publicly available on the Website; when Defendant did that it knowingly disclosed Plaintiff's personal information from a motor vehicle record.

121. Defendant obtained Plaintiff's driver's license number from a motor vehicle record and then made that driver's license number publicly available on the Website; when Defendant did that, it knowingly disclosed Plaintiff's personal information from a motor vehicle record.

122. Defendant disclosed the Report at its records division to persons who sought the report and the information thereon for the purpose of marketing.

123. Defendant, via PRUS/LexisNexis, disclosed the Report to persons who sought the report and the information thereon for the purpose of marketing.

124. Defendant is liable for the actions of PRUS/LexisNexis because:

    a.    PRUS/LexisNexis is Defendant's agent for purposes of disclosing DMV-349s via the Website;

    b.    Defendant has ratified the actions of PRUS/LexisNexis in disclosing DMV-349s via the Website; and

    c.    Defendant engaged in a civil conspiracy to violate the DPPA with PRUS/LexisNexis;

125. Defendant knowingly disclosed Plaintiff's personal information from a motor vehicle record for the improper purpose of solicitation, including the solicitation of legal business by personal injury attorneys.

126. Solicitation in general, and in particular lawyers' solicitation seeking new clients, is not a permissible purpose for disclosing motor vehicle records under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

127. Because Defendant regularly and knowingly continues to disclose DPPA-protected personal information from motor vehicle records for purposes of solicitation, even after receiving a cease-and-desist letter asking it to stop, Defendant's systematic violations of the DPPA are likely to continue.

128. As a proximate result of Defendant's conduct, Plaintiff received solicitations by mail for, among other things, legal services in connection with the Accident. Each such solicitation contained a prominent legend noting, "This is an advertisement for legal services", or words to similar effect.

129. As a proximate result of Defendant's disclosure of Plaintiff's personal information, Plaintiff has been harmed, by, among other things:

    a.    Suffering the statutory harm of having his personal information disclosed;

    b.    Receiving unwanted marketing solicitations and having to deal with this solicitations;

    c.    Having his personal information disclosed to lawyers, body shops, and chiropractors in connection with his accident;

    d.    Having his personal information disclosed to mail carriers and others in connection with a potential need for legal services; and

e.   Being exposed to an increased risk of identity theft, particularly due to the disclosure of his driver's license number and being concerned about said increased risk.

130.   Plaintiff is entitled to an award of $2,500 for each person to whom Defendant or PRUS/LexisNexis disclosed his personal information.

**COUNT II**
**(DECLARATORY AND INJUNCTIVE RELIEF FOR**
**VIOLATION OF SECTION 2724(A) OF THE DPPA)**

131.   The allegations contained in the paragraphs above are incorporated herein by reference.

132.   Under 18 U.S.C. § 2724(b)(4), the Court should declare that Defendant's practice of disclosing DMV-349s without redacting information from motor vehicle records violates the DPPA.

133.   Under 18 U.S.C. § 2724(b)(4), the Court should enter a preliminary and permanent injunction prohibiting Defendant from disclosing personal information from motor vehicle records for improper purposes, including the improper purpose of solicitation. Specifically, the Court should enjoin Defendant from:

a.   Disclosing names and addresses sourced from DMV-349s for purposes of solicitation;

b.   Disclosing DPPA-protected personal information without first identifying the person requesting the information,

c.   Disclosing DPPA-protected information to a requester without first determining that the requester seeks the information primarily for a purpose permitted under the DPPA, and

24

d.     Disclosing DPPA-protected information without keeping a proper record of all such transactions in a manner which complies with the DPPA's record-keeping requirements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for the following relief:

1.     To enter a preliminary injunction:

    a.     Prohibiting Defendant from disclosing unredacted DMV-349s through its records division without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

    b.     Prohibiting Defendant from disclosing DMV-349s through its records division to persons without DPPA-permitted purpose without redacting all of the following:

        i.     Each driver's name;

        ii.     Each driver's address;

        iii.     Each driver's date of birth;

        iv.     Each driver's telephone number; and

        v.     Each driver's license number;

    c.     Prohibiting Defendant, PoliceReports, US, LLC, and LexisNexis Claims Solutions, Inc from disclosing unredacted DMV-349s through any website or electronic means without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

       d.     Prohibiting Defendant, PoliceReports, US, LLC, and LexisNexis Claims Solutions, Inc from disclosing DMV-349s through any website or electronic means to persons without DPPA-permitted purpose without redacting all of the following:

          i.     Each driver's name;

          ii.    Each driver's address;

          iii.   Each driver's date of birth;

          iv.   Each driver's telephone number; and

          v.    Each driver's license number;

2. To certify this action as a class action on behalf of the class defined herein or as amended in subsequent motions or briefing, to appoint Plaintiff to represent the class, and to appoint the undersigned counsel as counsel for the Class;

3. To declare unlawful, in violation of the DPPA, Defendant's practice of disclosing unredacted DMV-349s through its records division or through website or other electronic means, without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

4. To enter a permanent injunction:

       a.     Prohibiting Defendant from disclosing unredacted DMV-349s through its records division without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

b. Prohibiting Defendant from disclosing DMV-349s through its records division to persons without DPPA-permitted purpose without redacting all of the following:

i. Each driver's name;

ii. Each driver's address;

iii. Each driver's date of birth;

iv. Each driver's telephone number; and

v. Each driver's license number;

c. Prohibiting Defendant, PoliceReports, US, LLC, and LexisNexis Claims Solutions, Inc from disclosing unredacted DMV-349s through any website or electronic means without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

d. Prohibiting Defendant, PoliceReports, US, LLC, and LexisNexis Claims Solutions, Inc from disclosing DMV-349s through any website or electronic means to persons without DPPA-permitted purpose without redacting all of the following:

i. Each driver's name;

ii. Each driver's address;

iii. Each driver's date of birth;

iv. Each driver's telephone number; and

v. Each driver's license number;

5. To order Defendant to pay Plaintiff and each Class member $2,500 for each time such person's personal information was disclosed without a DPPA-permitted purpose;

6. For a trial by jury on all issues so triable; and

7. For such other and further relief as the Court deems just and proper.

Dated this the 1st day of September, 2020.

/s/ J. David Stradley
N.C. State Bar No. 22340
stradley@whiteandstradley.com
Robert P. Holmes, IV
N.C. State Bar No. 12438
rob@whiteandstradley.com
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina 27612
Telephone: (919) 844-0400

/s/ John F. Bloss
N.C. State Bar No. 23947
jbloss@greensborolaw.com
Frederick L. Berry
N.C. State Bar No. 9696
fberry@greensborolaw.com
HIGGINS BENJAMIN, PLLC
301 North Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone:(336) 273-1600

/s/Andrew H. Brown
N.C. Bar No. 28450
drew@greensborolawcenter.com
James R. Faucher
N.C. Bar No. 31514
james@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina 27401
Telephone:(336) 478-6000

*Attorneys for Plaintiff*