UNITED STATES DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Case Number 3:20-CV-00482-KDB-DSC

JOHNATHAN S. HENSLEY, on behalf of
himself and others similarly situated,

*Plaintiff,*

v.

CITY OF CHARLOTTE, a North Carolina
municipal corporation,

*Defendant.*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Johnathan S. Hensley seeks a preliminary injunction to prevent the Defendant's instrumentality, the Charlotte-Mecklenburg Police Department ("CMPD"), from continuing to violate the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721, *et seq.* ("DPPA").

As established below, Plaintiff satisfies the four requirements for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of equities; and (4) benefit to the public. *Winter v. Natural*

*Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008); *United States v. South Carolina,* 720 F.3d 518, 533 (4th Cir. 2013). All of these factors weigh in favor of issuing a preliminary injunction to bring to a halt CMPD's ongoing violations of the DPPA during the pendency of this action.

## STATEMENT OF FACTS[1]

At least since 2007 CMPD has made its completed form DMV-349 motor vehicle crash reports ("DMV-349s") available to the public, both online (through LexisNexis Risk Solutions, Inc., and its predecessors-in interest[2]) and at its physical locations. The injunction issued last month against

---

[1] Many of the facts referenced herein are taken from the transcript of a Fed. R. Civ. P. 30(b)(6) deposition given on August 5, 2019 by witnesses designated by CMPD. (The "CMPD Tr.," **Exhibit A** hereto). That deposition was taken by plaintiffs' counsel in two actions against numerous lawyers using accident reports, including CMPD accident reports, for mail-marketing campaigns to accident victims. *Hatch v. DeMayo*, 1:16-cv-00925-LCB-LPA (M.D.N.C.), and *Garey v. Farrin*, 1:16-cv-542-LCB-LPA (M.D.N.C.). The firms that represent the plaintiffs in *Hatch* and *DeMayo* are collectively plaintiff's counsel in this action. The testimony of the witnesses CMPD tendered as Rule 30(b)(6) witnesses in the *Hatch* and *Garey* actions are admissible against them here as party admissions. *See* Fed. R. Evid. 801(d)(2)(D).

[2] In about 2007, CMPD contracted with Police Reports US, LLC ("PRUS"), to disseminate CMPD's DMV-349s online. (CMPD Tr. pp. 108-09). In about 2014, LexisNexis purchased PRUS. Afterwards, the CMPD reports were available to the public through a LexisNexis internet portal. (*Id.* pp. 110, 154:21-23, 158). By contracting with PRUS and LexisNexis to disseminate the accident reports to interested parties, CMPD benefited by having less foot traffic at its own facilities. (*Id.* p. 132-33). To facilitate the public's ability to access the reports, CMPD's website included a link to the LexisNexis portal. (*Id.* p. 132:15-20).

LexisNexis by this Court in its Order in *Gaston v. LexisNexis Risk Solutions, Inc.,* No. 5:16-cv-00009-KDB-DCK, 2020 U.S. Dist. LEXIS 160012 (W.D.N.C. Sept. 2, 2020) (the "Gaston Order"), enjoined LexisNexis from disclosing CMPD DMV-349s that show a North Carolina resident's DPPA-protected personal information. As discussed below, however, CMPD nevertheless continues to make copies of theDMV-349s freely available on its premises to the general public.

### A. Plaintiff Hensley.

Plaintiff Johnathan Hensley was involved in a motorcycle wreck in Charlotte on November 22, 2017. He gave the investigating CMPD officer his name and, after the officer looked up Mr. Hensley's information, confirmed the accuracy of his date of birth shown on CMPD's online system. Mr. Hensley did not provide his driver's license number or nine-digit zip code to the investigating CMPD officer. Decl. of J.S. Hensley, **Exhibit B**, ¶¶ 3-8.

The DMV-349 prepared by the CMPD officer included Mr. Hensley's personal information including his address, showing a nine-digit zip code; his date of birth; his North Carolina driver's license number; and his telephone

number.[3] *Id.* ¶ 10. The CMPD officer checked "Yes" in the "Same Address as Driver's License" box confirming that the address shown on the DMV-349 was the same address shown on Mr. Hensley's North Carolina driver's license. *Id.* ¶ 11.

Shortly after the accident, Mr. Hensley received numerous solicitation letters from lawyers seeking to represent him in pursuing a claim arising from the accident. Some of those solicitations included a copy of the CMPD DMV-349 relating to the accident. *Id.* ¶ 12.

### B. CMPD's On-Site Publication of Its DMV-349s.

For many years, CMPD has placed one or more copies of each recent DMV-349 on the front desk of its records division[4] so than anyone who comes into the division can personally view and, if desired, electronically scan or otherwise record the information on the DMV-349. CMPD Tr. pp. 127-29, 134-35. This practice continues today, as CMPD unabashedly admits in its Answer. ECF 15 ¶ 46. *See also* Decl. of M. Briggs, **Exhibit C**, ¶¶ 3-5.

---

[3] Because Mr. Hensley did not provide the officer with his nine-digit zip code or driver's license number, that information necessarily came from NCDMV records. (*See, e.g.,* **Exhibit A** pp. 11-14, 20:6-21:4, 95-96, 103, 119-120; Gaston Order, **2020 U.S. Dist. LEXIS 160012** at *12 n.3).

[4] At least until August 5, 2019, CMPD also made its DMV-349s available to the public at all 13 division offices within the City of Charlotte. (**Exhibit A** pp. 135:21 – 136:13).

The DMV-349s that CMPD makes available to the public include the names, addresses,[5] and driver's license numbers of the persons involved in traffic accidents. CMPD Tr., **Exhibit A**, pp. 20:6-19, 168:9-17, 186-87. CMPD does not redact any of this personal information on the DMV-349s it makes available to the public. *Id.* p. 147:10-17, 149:16-22, 150:2-4, 161:13-17, 168:9-13). Nor does CMPD require any certification whatsoever from a person wishing to view the reports as to the person's intended use for the information gleaned from the reports. *Id.* p. 129:2-9; **Exhibit C** ¶ 5. CMPD keeps no records as to the persons who have reviewed the accident reports. CMPD Tr., **Exhibit A**, p. 130:24-131:9.

### C. CMPD Remains Undeterred by Demands, including this Court's Gaston Order, to Cease Publication of its DMV-349s.

CMPD has disregarded various communications—including, most significantly, this Court's Gaston Order—demanding that it stop disclosing its DMV-349s containing accident victims' personal information to persons with no DPPA-permissible use. CMPD is, for reasons known only to itself, undaunted by the fact that its publication of personal information in DMV-349s violates the DPPA, and doggedly continues to make unredacted reports

---

[5] When a CMPD officer auto-populates the DMV-349, the source of the driver's name and address is the DMV database. **Exhibit A** pp. 21-22, 25:4-10, 119-20.

available to anyone who wants to view them, including persons who use the information for mail marketing.

For example, four years ago, on October 4, 2016, undersigned counsel David Stradley sent a letter to CMPD demanding, *inter alia*, "that personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained in connection with a motor vehicle record be disclosed only in a manner which is permissible under the DPPA." *See* **Exhibit D**, Decl. of D. Stradley and Exhibit A thereto. The letter was delivered to CMPD's General Counsel on October 5, 2016. *Id.*

More recently, when LexisNexis attempted to require persons accessing the CMPD accident reports to certify a permissible purpose, CMPD "called [LexisNexis] out" on this effort, and mandated that LexisNexis again allow unrestricted access to the CMPD DMV-349s. CMPD Tr., **Exhibit A**, p. 133:9-19.

In the September 2, 2020 Gaston Order, this Court granted summary judgment against the LexisNexis defendants for violations of the DPPA as to "the subclass of those class members whose accident reports indicate that the address in the report matches the address on their driver's license," concluding that as to that subclass the "Defendants have violated the DPPA as a matter of law." 2020 U.S. Dist. LEXIS 160012 at *50. The Court,

accordingly, entered the following injunction against the LexisNexis

defendants:

> Defendants and their officers, agents, servants, employees,
> and attorneys and those acting in active concert with them are
> enjoined from disclosing or making access available to CMPD
> DMV Form 349 vehicle accident reports that include a North
> Carolina resident's "personal information" as defined in the
> DPPA and are "motor vehicle records" under the DPPA or contain
> such personal information sourced from the DMV, a driver's
> license or other motor vehicle record without redacting the
> personal information, obtaining the consent of the person whose
> personal information appears on the record or having a good faith
> belief that the accident report will be used for a specific purpose
> permitted by the DPPA (which Defendant shall record and
> maintain in accordance with 18 U.S.C. § 2721 (c)).

*Id.* p. *61.

Significantly, the Court in the Gaston Order made clear that its

reasoning is intended to be generally applicable to providers of DMV-349s:

> Although this injunction does not apply to members of the
> public outside the certified class, its reasoning is of course
> generally applicable to all North Carolina accident reports
> subject to the DPPA as described above, and the Court notes that
> the DPPA provides the Court discretion to award 'punitive
> damages upon proof of willful or reckless disregard of the law' if
> future violations of the DPPA are proven" (*quoting* 18 U.S.C. §
> 2724 (b)(2))).

*Id.* p. *61 n. 34.

In particular, as to CMPD, the Court instructed that "*to the extent that*

*CMPD provides such records to the public without redacting that personal*

*information or limiting disclosure only for those uses permitted by the DPPA then it is in violation of the statute.*" *Id.* at *52-53 (emphasis added).

Nevertheless, in the face of the Court's unequivocal instructions to CMPD in the Gaston Order to stop making its unredacted accident reports available to persons who do not have a permissible purpose under the DPPA, CMPD defiantly continues to provide its DMV-349s to marketers and others who lack any DPPA permissible purpose. (*See* **Exhibit C**).

<u>ARGUMENT</u>

I.    **PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS DPPA CLAIM.**

A party seeking a preliminary injunction must make a "clear showing" of likelihood of success, but the movant is not required to show a certainty of success. *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). Plaintiff easily satisfies this requirement.

The Act concisely defines the cause of action upon which Plaintiff maintains this action as follows:

> A person who [1] knowingly obtains, discloses or uses personal information, [2] from a motor vehicle record, [3] for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains[.]

18 U.S.C. § 2724(a). *See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008).

As discussed below, Plaintiff's likelihood of successfully establishing all of these elements is straightforward.

### 1. CMPD Continues Knowingly to Disclose Plaintiff's and Class Members' Personal Information.

The DPPA defines "personal information" as "information that identifies an individual, *including an individual's…driver identification number, name [and] address*." 18 U.S.C.A. § 2725 (emphasis added).

CMPD's DMV-349s include all of the information highlighted above, and thus include DPPA "personal information." CMPD's continued dissemination of its unredacted accident reports without requiring certification of a DPPA permissible purpose, in the face of express notice that its practices violate the DPPA, including an Order of this Court, is plainly a "knowing" disclosure of DPPA-protected information.[6]

### 2. CMPD is Disclosing Personal Information "From a Motor Vehicle Record."

To be protected by the DPPA, personal information must come "from a motor vehicle record." 18 U.S.C. § 2724(a). The Act defines a "motor vehicle record" as any record that pertains to a motor vehicle operator's permit,

---

[6] In any event, the courts agree that the "knowingly" scienter applies merely to the obtaining, disclosing, or using of DPPA personal information, and does not require a showing that the defendant intentionally violated the DPPA. *See, e.g., Wilcox v. Swapp*, 330 F.R.D. 584, 594-595 (E.D. Wash 2019); *Wiles v. Worldwide Info., Inc.*, 809 F. Supp.2d 1059, 1080-1081 (W.D. Mo. 2011); *Rios v. Direct Mail Express, Inc.*, 435 F. Supp.2d 1199, 1205 (S.D. Fla. 2006).

-9-

motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

In the Gaston Opinion, this Court issued a declaratory judgment that, with regard to the subclass of persons whose names appear on DMV-349s in which the box is checked indicating that the person's address in the report matches the address on the person's driver's license, the DMV-349 is a DPPA "motor vehicle record" as a matter of law. 2020 U.S. Dist. LEXIS 160012 at *60; *see also id.* at *28. Further, CMPD accident reports "which contain personal information obtained from 'motor vehicle records' such as DMV records[7] or driver's licenses[8] are subject to the DPPA." *Id.* at *52.

The same analysis applies to CMPD. CMPD continues to disclose DPPA personal information contained in accident reports, like Plaintiff's, showing that the driver's license address and actual address are the same, and/or

---

[7] The DMV database is unquestionably a motor vehicle record.

[8] "[I]nformation obtained from a driver's license is information obtained from a motor vehicle record." *Pavone v. Law Offices of Anthony Mancini, Ltd.*, N.D. Ill. No. 15 C 1538, 2016 WL 4678311, at *4 (N.D. Ill. Sept. 7, 2016) (emphasis in original); *accord Eggen v. WESTconsin Credit Union*, No. 14-CV-873-BBC, 2016 WL 4382773, at *3 (W.D. Wis. Aug. 16, 2016). Moreover, "If the original source of [an]other government agency's information is the state department of motor vehicles, the DPPA protects the information throughout its travels." *Whitaker v. Appriss, Inc.*, No. 3:13-CV826-RLM-CAN, 2014 WL 4536559, at *4 (N.D. Ind. Sept. 11, 2014) (emphasis added).

-10-

which are auto-filled with DMV information.[9]  The information from those

DMV-349s are from DPPA "motor vehicle records" as a matter of law.

In the Gaston Order, the Court concluded that the LexisNexis

defendants:

> have violated the DPPA as a matter of law because the Crash
> Reports related to that subclass are "motor vehicle records" as
> discussed earlier and Plaintiffs are entitled to summary
> judgment because, *inter alia*, it is undisputed that Defendants
> make no effort to limit the disclosure of Crash Reports for
> purposes permitted by the DPPA (and have disclosed the
> personal information contained in those records for marketing
> and/or solicitation purposes that are not permitted under the
> DPPA), even though all records may not have been disclosed (as
> distinguished from just being "made available") and some records
> may have been disclosed for permissible purposes.

*Id.* p. *50. Here, where CMPD eschews instructions, even those from this

Court directly to CMPD, to require certification of a DPPA permissible

purpose before disclosing its DMV-349s, it continues to violate the DPPA as a

matter of law.

### 3. CMPD's Disclosures of Its DMV-349s to the Public Are Not for a DPPA Permissible Purpose.

Under the DPPA, "[d]isclosure of personal information is prohibited

unless for a purpose permitted by an exception listed in 1 of 14 statutory

---

[9] Indeed, CMPD admits in its Answer that "when the Same Address
Box is checked 'yes' the DMV-349 contains the address from the driver's
license" (ECF 15 ¶ 40); that the box is checked yes on the vast majority of
DMV-349s it prepares (*id.* ¶ 43); and that it currently makes its DMV-349s
available to anyone who appears at its records division (*id.* ¶ 46).

subsections." *Maracich*, 570 U.S. 48, 52 (2013) (*citing* 18 U.S.C. §§ 2721(b)(1)-(14)). "Each distinct disclosure or use of personal information acquired from a state DMV must be permitted by the DPPA." 570 U.S. at 73-74. "[A]n important objective of the DPPA [is] to restrict disclosure of personal information in motor vehicle records to businesses for the purpose of direct marketing and solicitation. [The DPPA's] *exceptions should not be construed to interfere with this objective unless the text commands it.*" 570 U.S. at 50 (emphasis added)).

CMPD may argue that its disclosure of unredacted DMV-349s to the public is permissible under 18 U.S.C. § 2721(b)(1), permitting "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." However, this Court, in the Gaston Order, rejected that argument:

> To be clear, the gathering of personal information to prepare the Crash Reports is a government function permitted by section 2721(b)(1) in the same way that gathering personal information to create a driver's license or motor vehicle registration is permitted by the act. *However, once the information is lawfully obtained, the disclosure of the information, in and of itself, is not an independent governmental function that is permitted by the DPAA (absent redaction or a separate permitted use).*

2020 U.S. Dist. LEXIS 160012 at *52 n. 20 (emphasis added).

CMPD may also contend that because DMV-349s are public records under North Carolina, their disclosure is permitted under the DPPA exception for "any other use specifically authorized under the law of the State that holds the record, *if such use is related to the operation of a motor vehicle or public safety*." 18 U.S.C. § 2721(b)(14) (emphasis added). But CMPD cannot show its *disclosure* of Plaintiff's and putative class members' personal information is in any way "related to the operation of a motor vehicle or public safety" and, accordingly, this argument fails as a matter of law. *See* Gaston Order, 2020 U.S. Dist. LEXIS 160012 at *59-60, 60 n.9 ("[W]hile an accident report may be a public record subject to unlimited disclosure with respect to information in the report that is not personal information protected under the DPPA, it would completely undermine the purpose of the DPPA if a state could simply designate a document containing personal information subject to DPPA protection as a 'public record' and thereby avoid complying with its restrictions. Simply put, the very essence of the DPPA is to limit the disclosure of information that had previously been made widely available as a public record . . . And, it is familiar doctrine that the prohibition of a federal statute 'may not be set at naught by a state statute'" (quoting *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173 (1942)).

## II. A PRELIMINARY INJUNCTION IS NECESSARY TO STOP CMPD FROM CONTINUING TO VIOLATE THE DPPA AND TO AVOID FURTHER AND IRREPARABLE INJURY TO PLAINTIFF AND THE PUTATIVE CLASS.

The Fourth Circuit has stated that "a complainant need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief. *All that need be proved is a violation of the statute.*" *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988) (emphasis added); *see Salient Crgt v. Solutions*, 2020 U.S. Dist. LEXIS 117170, *18, 2020 WL 3550008 (E.D. Va. Apr. 2, 2020) ("[I]t is well-settled… that in the event a movant has demonstrated a statutory violation, and the statute at issue authorizes injunctive relief, the movant need not demonstrate irreparable harm"); *Lynn v. Monarch Recovery Mgmt., Inc.*, No. CIV. WDQ-11-2824, 2013 WL 1247815, at *7 (D. Md. Mar. 25, 2013 (same); *United States v. H.W. Andersen Prods.*, 1997 U.S. Dist. LEXIS 3080, *5-6 (M.D.N.C. Jan. 24, 1997) (same). *See also* Gaston Order, 2020 U.S. Dist. LEXIS 160012 at *41 ("[I]if a Defendant is found to have, as alleged here, engaged in a pattern and practice of disclosing thousands of Crash Reports that violate the DPPA it is appropriate to redress that conduct with injunctive relief. An injunction ordering an end to any unlawful conduct will properly enforce the statute").

Even if that were not still the standard in the Fourth Circuit, irreparable harm is established where Plaintiff is at peril of having CMPD publish his personal information each time he may be in a motor vehicle accident. *See, e.g., Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1044-1045 (9th Cir. 2012) ("We have little difficulty concluding the record supports the district court's finding that [defendant] PRA would have continued to violate the TCPA if an injunction had not been issued….In response to [class representative] Meyer's motion for a preliminary injunction, PRA did not acknowledge the wrongful nature of its conduct. Instead, PRA assured the court it would stop calling Meyer without making any assurance regarding other members of the provisional class. We agree with Meyer that PRA's violation of the TCPA violated his right to privacy, an interest the TCPA intended to protect….Accordingly, Meyer demonstrated that irreparable harm is likely in the absence of injunctive relief" (citation omitted)).

It is, moreover, appropriate in a situation such as the one before the Court to consider the risk of harm to the putative class, even though a class has not yet been certified. *See, e.g.*, *Abdi v. Duke*, 280 F. Supp.3d 373, 400 (W.D.N.Y. 2017) ("Under appropriate circumstances, a court may grant preliminary injunctive relief in favor of putative class members before class certification, and correspondingly, assess the harm to  putative  class

-15-

members when considering the preliminary injunction motion"); *Doe v. Trump*, 418 F. Supp.3d 573, 603-04, 603 n. 10 (D. Ore. 2019) ("[W]hen a plaintiff requests preliminary injunctive relief before class certification has been decided, a court may consider the harm to the putative class and grant classwide appropriate preliminary injunctive relief to preserve the *status quo*, particularly when, as in this case, there is alleged classwide harm and conduct aimed at a class of persons….Providing such preliminary classwide relief does not first require that the Court engage in some version of an analysis under Rule 23 of the Federal Civil Rules of Civil Procedure, as argued by Defendants. . . . Having putative class members suffer this alleged irreparable harm merely because the preliminary injunction had to be litigated in an expedited fashion before class certification could be fully litigated is contrary to the purposes behind class actions and preliminary injunctive relief to preserve the *status quo*" (collecting cases)); "[C]ourts may enter class-wide injunctive relief before certification of class" (citations omitted)); *Thomas v. Johnston,* 557 F. Supp. 879, 916 n. 29 (W.D. Tex. 1983) ("It appears to be settled … that a district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers"). *See generally* William B. Rubenstein, NEWBERG

ON CLASS ACTIONS § 4:30 (5th ed. 2017) ("[A] court may issue a preliminary injunction in class suits prior to a ruling on the merits").

Here, as in *Gaston*, CMPD has:

> obtained the personal information of the class members as discussed above and it still remains available without redaction to those who might request it. [Plaintiffs] and their fellow class members ought not to have to wait until their information is again used inappropriately to maintain standing.

Gaston Order, 2020 U.S. Dist. LEXIS 160012 at *43. *See also Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 913-14 (N.D. Ill 2017) ("In arguing that plaintiffs have failed to show irreparable harm, Ocwen again focuses solely on the risk of injury to the named plaintiffs….But again, the Court must consider the interests of the entire limited class, and plaintiffs have introduced evidence that other class members are at risk of receiving calls from Ocwen in the future….The Court therefore finds that plaintiffs have demonstrated…irreparable harm sufficient to justify a preliminary injunction").[10]

---

[10] The above analysis would apply even if CMPD decides, before this Court issues an injunction, voluntarily to stop publishing unredacted DMV-349s. *See United States v. H.W. Andersen Prods.*, 1997 U.S. Dist. LEXIS 3080, *5-6 (M.D.N.C. Jan. 24, 1997) ("The standard of review for the Court then is to determine whether there has been a violation of the statute and further to determine whether the identified violations are likely to continue in the future. To the extent that Defendants assert that they have now complied with GMP regulations, the Court recognizes that cessation of illegal activity can be a relevant factor in evaluating whether injunctive relief is

-17-

Plaintiffs and class members do not have an adequate remedy at law for such future violations where it is unlikely that CMPD could satisfy a class-wide judgment for its previous violations of the DPPA. Assuming very conservatively that there are only 100,000 people in the class as defined in the Complaint,[11] CMPD would be facing $250 million in DPPA statutory liability. *See* 18 U.S.C. § 2724(1).

## III. THE BALANCE OF EQUITIES FAVORS PRELIMINARY INJUNCTIVE RELIEF.

The balance of hardship between the parties weighs in favor of a permanent injunction, where such relief is the only means available to Plaintiff and the putative class to prevent further publication of their information.

---

warranted. Nevertheless, Defendants cannot render a case moot by voluntarily ceasing their illegal activities particularly where such cessation occurs in the face of prospective litigation" (citation omitted)).

[11] The Gaston Order stated, "It is indisputable that a vast number of individuals have had their DMV personal information sold, made available and disclosed to persons who did not have a permissible use for the information," and referred to the plaintiffs' estimate of 250,000 class members. 2020 U.S. Dist. LEXIS 160012 at *24. *See also* **Exhibit D**, Decl. of D. Stradley, p. 98 of Exhibit B thereto (showing over 30,000 of reportable accidents in Mecklenburg County annually); ECF 15 ¶ 42 (CMPD acknowledges it investigates tens of thousands of accidents every year).

## IV.   THE PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF.

Likewise, it is in the public interest to prevent Defendants' unlawful practices as to persons who are not in the putative class in this action but who may be involved in collisions in the future.

## V.   THE COURT SHOULD WAIVE ANY BOND REQUIREMENT.

A preliminary injunction may issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." This includes, in appropriate circumstances, waiving the requirement altogether. *See Pashby v. Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013). "The burden of establishing the bond amount rests with the party to be restrained." *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp.3d 447, 465 (M.D.N.C. 2015). In setting the bond, a court should consider the potential loss to the restrained party if wrongfully restrained. *Id.*

Plaintiff respectfully requests that the Court not set a bond in this case or, at most, require a minimal bond of $250.00. First, CMPD will not be prejudiced by an injunction requiring it to comply with the law by not publishing unredacted DMV-349s to persons without a DPPA permissible purpose. *See, e.g., Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (upholding district court's determination that no security was needed in conjunction with preliminary injunction because of the strength of

-19-

plaintiff's case and the strong public interest involved); *Cloud Peak Energy Inc. v. United States DOI*, 415 F. Supp. 3d 1034, 1053 (D. Wyo. 2019) ("Having determined there is no likelihood of harm to [the government], the Court finds an injunction bond is unnecessary in this case"). Second, Plaintiff lacks the resources to post a significant bond. **Exhibit B** ¶ 14. *See Lutz v. Case Farms, LLC*, 2020 U.S. Dist. LEXIS 160339, *22-23 (W.D.N.C. Aug. 31, 2020) (Court set nominal bond in connection with preliminary injunction where plaintiff lacked sufficient resources to post a significant bond).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion for preliminary injunction.

Respectfully submitted, this the 4th day of November, 2020.

**/s/ J. David Stradley**
N.C. State Bar No. 22340
stradley@whiteandstradley.com
Robert P. Holmes, IV
N.C. State Bar No. 12438
rob@whiteandstradley.com
WHITE & STRADLEY, PLLC
Charles B. Root Wynd
Raleigh, North Carolina 27612
Telephone: (919) 844-0400

**/s/ John F. Bloss**
N.C. State Bar No. 23947
jbloss@greensborolaw.com
Frederick L. Berry
N.C. State Bar No. 9696
fberry@greensborolaw.com
HIGGINS BENJAMIN, PLLC 3105
301 North Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone:(336) 273-1600

**/s/Andrew H. Brown**
N.C. Bar No. 28450
drew@greensborolawcenter.com
James R. Faucher
N.C. Bar No. 31514
james@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina 27401
Telephone:(336) 478-6000

*Attorneys for Plaintiff*

-21-