UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-482-KDB-DSC

| | |
|---|---|
| JOHNATHAN S. HENSLEY, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHARLOTTE, a North Carolina municipal corporation,<br><br>Defendant. | **DEFENDANT'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

NOW COMES Defendant City of Charlotte, North Carolina, by and through undersigned counsel, and responds to Plaintiff's Motion for Preliminary Injunction that was filed with this Court on November 4, 2020. As shown below, Plaintiff's Motion should be denied because: Plaintiff lacks standing to bring this action; Defendant is not "a person" subject to suit under the Driver's Privacy Protection Act; and Plaintiff has otherwise failed to show he is entitled to injunctive relief.

**STATEMENT OF FACTS**

Defendant City of Charlotte ("City" or "Defendant") is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina. *See* Doc. 1, ¶ 2. The Charlotte-Mecklenburg Police Department ("CMPD") is a component of the City. *Id.,* ¶ 3. North Carolina law enforcement officers, including CMPD officers, are required to document reportable vehicle crashes on a standard form promulgated by the North Carolina Department of Motor Vehicles ("NCDMV") known as a DMV-349. *Id.,* ¶ 27. A reportable crash is defined as one that results in death or injury to another human

1

being, total property damage of $1000 or more, or property damage of any amount to a vehicle seized pursuant to N.C.G.S. § 20-28.3.[1] *Id.*, ¶ 21.

Pursuant to N.C.G.S. § 20-166.1(e), CMPD officers are required to investigate reportable accidents such as the one in which Plaintiff was involved. *Id.*, ¶ 25. North Carolina law requires any driver who is involved in a motor vehicle accident to produce his state-issued driver's license to the investigating officer. *Id.*, ¶ 26. When a DMV-349 has been completed by a N.C. law enforcement officer, it typically contains the following personal information about the drivers involved in the accident: name, date of birth, gender, residence address, and NCDMV drivers license number. *Id.*, ¶¶ 13 – 17, 43. At the time of Plaintiff's reportable vehicle accident on November 22, 2017, he had a NCDMV issued drivers license, and his drivers license number was included on the DMV-349 that was completed by the CMPD officer. *Id.*, ¶¶ 19, 34 – 35. Pursuant to the federal Drivers Protection Privacy Act ("DPPA"), a "motor vehicle record" includes any record that pertains to an identification card issued by a department of motor vehicles, such as Plaintiff's N.C. drivers license. *Id.*, ¶¶ 15 – 18. *See also,* 18 U.S.C. § 2725(1).

For purposes of the DPPA, 18 U.S.C. §§ 2721 *et seq.*, "a subordinate division of the state like a city administrative unit is a state agency." *See Gaston v. LexisNexis Risk Sols., Inc.*, No. 516CV00009-KDB-DCK, 2020 WL 5235340, at *18, (W.D.N.C. Sept. 2, 2020).[2] Thus, in interpreting the text of the DPPA as it pertains to North Carolina DMV-349 accident reports, there is no basis for treating another agency of the State, such as the City of Charlotte or the CMPD, any differently than the NCDMV is treated under the DPPA. *Id.* ("[T]he Court declines to find any

---

[1] NCGS § 20-28.3 addresses seizure, impoundment, and forfeiture of motor vehicles for offenses involving impaired driving while license revoked or without license and insurance, and for felony speeding to elude arrest.
[2] *See* footnote 25, *Gaston v. LexisNexis Risk Sols., Inc.*, No. 516CV00009-KDB-DCK, 2020 WL 5235340, at *18, (W.D.N.C. Sept. 2, 2020).

basis either in the text of the statute or its purpose to treat the same accident report differently based on whether it is disclosed by the DMV or another agency of the State" such as the City of Charlotte, and "[A] city administrative unit is a state agency").

At least as early as 2007, the City began making completed CMPD DMV-349 forms available to the public in the CMPD Records Division. Doc. 1, ¶¶ 45 – 46. Also, since 2007, multiple people have come to the Records Division each business day to review DMV-349 reports, and Plaintiff asserts one or more of those people reviews each DMV-349 for marketing purposes. *Id.,* ¶ 49.

Beginning in 2007, the City contracted with PoliceReports US ("PRUS"), a company that was later purchased by LexisNexis Claims Solutions ("LexisNexis"). *Id.,* ¶ 50. The contracts required PRUS and LexisNexis to make DMV-349s available on a LexisNexis company website ("the Website"). *Id.,* ¶ 51; Doc. 17, p. 2, footnote 2. The DMV-349s were made available for individual purchase (for example, by a person who needed a copy of his own accident report) and for bulk/subscription download of DMV-349s. *Id.,* ¶ 52.

Pursuant to the explicit terms of the contracts at issue in this matter, the crash reports/DMV-349s were made available by the City to PRUS/LexisNexis "*subject to the obligations of federal law.*" (emphasis in original). *See Gaston v. Lexis/Nexis, supra,* 2020 WL 5235340, at *19 (W.D.N.C. Sept. 2, 2020).[3] Thus, in contracting to provide the DMV-349s to PRUS/LexisNexis, "the City of Charlotte and CMPD have not violated the DPPA in any manner (because

---

[3] The contracts referenced by Plaintiff in the instant case are the same contracts that were at issue in *Gaston v LexisNexis, supra. See* Doc. 17, p. 2, footnote 2.

[PRUS/LexisNexis] could have disclosed the Crash Reports only in accordance with the DPPA)."[4] *Id.*

Plaintiff's reportable motor vehicle crash at issue here took place on November 22, 2017 in the City of Charlotte. Doc. 1, ¶ 67 – 68. Therefore, pursuant to N.C.G.S. § 20-166.1(a), the CMPD had jurisdiction to investigate the crash, and a CMPD officer responded to investigate the accident. *Id.,* ¶ 68. The responding CMPD officer completed a DMV-349 which contained Plaintiff's name, date of birth, address, drivers license number, and telephone number. *Id.,* ¶ 71. After the DMV-349 was completed, a copy was placed at the counter of the CMPD Records Division and was available for inspection. *Id.,* ¶ 78.

Within a few days of Plaintiff's crash, a copy of the DMV-349 related to his accident was published on the PRUS/LexisNexis website. *Id.,* ¶ 81. Because Plaintiff's DMV-349 and personal information was on the PRUS/LexisNexis website, he received targeted direct mail solicitations from attorneys seeking to represent him in pursuing a claim arising from the vehicle accident. *Id.,* ¶¶ 82 – 83; Doc. 17, p. 4. Plaintiff stated in his Declaration (Doc. 17-2) in support of his Motion for Preliminary Injunction and Memorandum of Law (Docs. 16, 17) that he was attaching a solicitation he received from Attorney DeMayo following his November 22, 2017 crash. *See* Doc. 17-2, ¶ 12, pp. 3 – 4. However, Plaintiff's Declaration did not include a solicitation, or any part of

---

[4] Plaintiff asserts in his Complaint, "Defendant is liable for the actions of PRUS/LexisNexis because:" PRUS/LexisNexis acts as Defendant's agent in disclosing DMV-349s on the LexisNexis website, Defendant has ratified PRUS/LexisNexis actions, and Defendant has engaged in a civil conspiracy to violate the DPPA with PRUS/LexisNexis. Doc. 1, ¶ 124. As noted above, this Court has previously held in *Gaston, supra,* that "the City of Charlotte and CMPD have not violated the DPPA in any manner (because [PRUS/LexisNexis] could have disclosed the Crash Reports only in accordance with the DPPA)." Plaintiff repeatedly cites and relies upon the *Gaston* Order throughout his Memorandum of Law in support of Plaintiff's Motion for Preliminary Injunction. *See Doc.* 17.

a solicitation, he allegedly received from Attorney DeMayo or any other attorney. Doc. 17-2, pp. 1 – 4.[5]

Plaintiff alleges that the City continues to publish unredacted DMV-349s in the CMPD's Records Division. (Doc. 16, p. 2). However, the City has discontinued doing so. *See* Defendant's Exhibit 1, Declaration of Kiersten Frost, ¶¶ 4 – 5.

## STATEMENT OF QUESTION PRESENTED

Can Plaintiff establish he is entitled to a Preliminary Injunction?

## ARGUMENT

### I. A Preliminary Injunction is an Extraordinary and Drastic Remedy

Plaintiff seeks a preliminary injunction to enjoin the City and CMPD from violating the DPPA. Doc. 17, p. 1. "In particular, Plaintiff requests an Order prohibiting the subject parties from the practice of freely distributing crash reports (which contain protected personal information) to any member of the public without first redacting all of the protected personal information shown on the crash report, unless a permissible purpose as set forth in 18 U.S.C. § 2721(b) is first certified." (Doc. 16, p. 2). "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren,* 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) (quotation and citation

---

[5] The DPPA defines protected "personal information" as information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), and telephone number. *See* 18 U.S.C. § 2725(3). In his Motion for Preliminary Injunction, Plaintiff has included two DMV-349s pertaining to two different accidents in Charlotte, N.C. Each of the DMV-349s Plaintiff submitted in support of his Motion for Preliminary injunction discloses DPPA protected personal information of some of the drivers involved in these accidents, including their name, address, and telephone number. *See* Doc. 17-1, pages 204 – 208. Plaintiff's Doc. 17-1 also includes motor vehicle record information of the identified drivers including, for example, license plate numbers and vehicle identification numbers. *Id.* It is not apparent from the context of Plaintiff's Motion for Preliminary Injunction and supporting exhibits whether these two drivers consented to the public disclosure of their personal information in Plaintiff's unsealed exhibits.

5

omitted). Such a remedy involves the exercise of far-reaching power and a preliminary injunction is to be granted sparingly and in limited circumstances. *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).

A movant must make a clear showing of each of four elements before a preliminary injunction may issue: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *see also League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).

Applying these standards, Plaintiff has failed to make a clear showing, or any showing, that he has satisfied the requirements for obtaining a preliminary injunction.[6]

## II. Plaintiff Cannot Establish any of the Elements Necessary to Make a Clear Showing that he is Entitled to the Issuance of a Preliminary Injunction

### A. Plaintiff Cannot Show he is Likely to Succeed on the Merits

#### 1. Plaintiff Lacks Article III Standing Thereby Depriving the Court of Subject Matter Jurisdiction

Without standing to pursue this action, Plaintiff cannot succeed on the merits. The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. Therefore, standing to sue "ensure[s] that federal courts do not exceed their authority." *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies). The

---

[6] The City notes that Plaintiff is a member of the Federal Rule of Civil Procedure 23(b)(2) injunctive relief class and subclass certified by this Court in *Gaston v LexisNexis Risk Sols., Inc., supra,* 2020 WL 5235340, at *15 (W.D.N.C. Sept. 2, 2020). *See* Doc. 1, ¶¶ 67 – 77; Doc. 17, p. 6.

"irreducible constitutional minimum" of standing consists of three elements, which Plaintiff as the party invoking federal jurisdiction, bears the burden of establishing:

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Spokeo, supra,* 136 S. Ct. at 1547, *citing Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 – 61, 112 S.Ct. 2130 (1992); *Friends of the Earth Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180 – 181, 120 S.Ct. 693 (2000).

Plaintiff is entirely unable to meet his burden of establishing standing based upon an injury in fact, traceable to challenged conduct of the City, that is likely to be redressed by a favorable judicial decision. Plaintiff has not plausibly asserted he received a legal solicitation based upon an attorney or other individual obtaining his DPPA protected personal information from a DMV-349 accident report located at the CMPD. Further, this Court has ruled that the City and CMPD did not violate the DPPA by *disclosing* DPPA protected personal information to PRUS/LexisNexis because the contract between the City and PRUS/LexisNexis required that PRUS/LexisNexis use the information "*subject to the obligations of federal law*." (emphasis in original). *See Gaston, supra,* 2020 WL 5235340, at *19 (W.D.N.C. Sept. 2, 2020). Consequently, Plaintiff lacks standing because he has suffered no injury in fact that is fairly traceable to the City and which is likely to be redressed by a favorable judicial decision. *Spokeo, supra,* 136 S. Ct. 1540, 1547 (2016). Indeed, as established below in Section II.A.2, it is a legal impossibility for Plaintiff's claims against the City to be redressed by a favorable judicial decision because the DPPA precludes a private cause of action against the City.

### 2. Plaintiff Cannot Show he is Likely to Succeed on the Merits because, as a Subordinate Division of the State, the City is not Subject to a Private Cause of Action Under the Drivers Privacy Protection Act

Under Section 2722(a) of the DPPA, it is "unlawful for **any person** knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." (emphasis added). *See* 18 U.S.C. § 2722(a), *Procurement for unlawful purpose*. Further, the DPPA defines "person" as "an individual, organization or entity, but does not include a State or agency thereof." *See* 18 U.S.C. § 2725(2). Additionally, the plain text of the DPPA pertaining to permissible private civil causes of action under the DPPA provides "[a] **person** who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." (emphasis added). *See* 18 U.S.C. § 2724(a). Thus, civil actions against States and their agencies are specifically precluded based upon the exclusion of "State or agency thereof" from the definition of "person" in the DPPA. *See* 18 U.S.C. §§ 2725(2), 2724(a).

Significantly, Plaintiff concedes that a cause of action under the DPPA may be brought <u>only</u> against "a person." Doc. 17, p. 8. Indeed, counsel for the City have been unable to locate any DPPA action against a North Carolina municipality or County other than the one Plaintiff attempts to fashion here contrary to the plain text of the DPPA. Given the absence of a private cause of action against the City, it is likely this case will be dismissed.

This Court has concluded that for purposes of the DPPA, 18 U.S.C. §§ 2721 *et seq.,* "a subordinate division of the state like a city administrative unit is a state agency." *See Gaston v. LexisNexis Risk Sols., Inc.*, *supra,* 2020 WL 5235340, at *18, (W.D.N.C. Sept. 2, 2020); *See also, Smith v. Hefner,* 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952). Thus, in interpreting the text of the DPPA as it pertains to North Carolina DMV-349 accident reports, there is no basis for treating another agency of the State, such as the City of Charlotte or the CMPD, any differently than the

NCDMV is treated under the DPPA. *Id.* ("[T]he Court declines to find any basis either in the text of the statute or its purpose to treat the same accident report differently based on whether it is disclosed by the DMV or another agency of the State" such as the City of Charlotte, and "[A] city administrative unit is a state agency"). Because the plain language of the DPPA does not authorize a private right of action against the State or an agency thereof, there is no cognizable cause of action against the City such as that Plaintiff seeks to pursue here.

Moreover, in a civil action against a person under § 2724(a) of the DPPA, injunctive relief may be sought. *See* 18 U.S.C. § 2724(b). However, these remedies are not available against a State or agency of the State under the express terms of the DPPA. Rather, the only DPPA remedies available against a State or agency thereof are set forth in 18 U.S.C. § 2723(b). Accordingly, Plaintiff's Motion for Preliminary Injunction against the City of Charlotte should be denied.

### 3. Plaintiff Cannot Establish an Injury in Fact in Support of Injunctive Relief

Further, in recently dismissing a claim for preliminary injunctive relief for plaintiffs in DPPA litigation raising virtually identical claims to those pursued by Plaintiff Hensley here, the U.S. District Court for the Middle District of North Carolina noted:

> To successfully plead for injunctive relief, a plaintiff "must establish an ongoing or future injury in fact," *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)), and "may not rely on prior harms," *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (citation omitted). This injury must also be "imminent" or "certainly impending." *Griffin v. Dept. of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) and *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

*See Hatch v. DeMayo*, No. 1:16CV925, 2020 WL 5763543, at *7 (M.D.N.C. Sept. 28, 2020).

Plaintiff has failed to show an ongoing or future injury in fact that is "imminent" or "certainly impending," such that would warrant injunctive relief. As established above, the City is no longer making DMV-349 accident reports containing DPPA protected personal information

available to the public in the CMPD Records Management Division. *See* Ex. 1, Declaration of Kiersten Frost, ¶¶ 4 – 5. Therefore, Plaintiff is at <u>absolutely no risk</u> of his DPPA personal information being disclosed by the City.

Here, Plaintiff's alleged injury in support of his motion for injunctive relief is that he "is at peril of having CMPD publish his personal information each time he may be in a motor vehicle accident." Doc. 17, p. 15. This risk articulated by Plaintiff necessarily pertains to a future accident, which may occur or which may never occur. Additionally, as with the uncertainty regarding whether Plaintiff will ever be involved in another reportable crash, it is just as uncertain and unforeseeable that any such crash would occur within the territorial jurisdiction of the CMPD to investigate such vehicle accidents.[7] As articulated by Plaintiff, the potential peril to which he suggests he is exposed is not "imminent" or "certainly impending," or traceable to the challenged conduct of the City.

Plaintiff also argues the Court should consider any similar such "risk of harm to the putative class, even though a class has not yet been certified." *Id.* This argument fails for the same reasons set forth immediately above – the risk of putative class members' personal information being published by the CMPD is tenuous at best given that it is conditioned upon a putative class member being involved in a reportable vehicle accident which may never take place, and if it does, may not occur within the jurisdiction of the CMPD to investigate. Plaintiff's argument is even weaker still as it relates to putative class members as it is entirely uncertain whether a class will be certified by the court. Therefore, Plaintiff has failed to show an "imminent" or "certainly impending," injury to putative class members that is traceable to the challenged conduct of the City such that

---

[7] N.C.G.S. § 15A-402 sets forth the jurisdiction of local law enforcement officers. CMPD officers possess territorial jurisdiction to investigate motor vehicle accidents in Mecklenburg County, N.C.

injunctive relief would be appropriate.

The Court in *Hatch v. DeMayo* rejected plaintiffs' argument analogous to the one Plaintiff Hensley seeks to advance here. In *Hatch,* plaintiffs argued they were entitled to pursue a claim for injunctive relief because "the next time a plaintiff is involved in a reportable motor vehicle collision in North Carolina, it is virtually certain that DPPA-protected personal information in his or her accident report will be 'obtained' by certain Defendants in connection with their marketing campaigns." The Court concluded that the likelihood of such a scenario was "remote and speculative," and accordingly, granted the defendants' motion to dismiss plaintiffs' claim for injunctive relief. *See Hatch v. DeMayo, supra,* 2020 WL 5763542, at *7 – 8 (M.D.N.C. Sept. 28, 2020).

As in *Hatch,* Plaintiff Hensley has failed to meet his burden of showing he is subject to an "imminent" or "certainly impending" harm based upon his assertion that he "is at peril of having CMPD publish his personal information each time he may be in a motor vehicle accident." Even if the CMPD were still making unredacted DMV-349s available in the Records Management Division, this would not suffice to establish an "imminent" or "certainly impending" harm to Plaintiff.

There is simply no interpretation of the facts or the law in this case leading to the conclusion that Plaintiff has met his burden of establishing the existence of a case or controversy sufficient to confer federal court jurisdiction in this matter, that a private cause of action under the DPPA is available against the City, or that injunctive relief is warranted for Plaintiff.

### B. Plaintiff Cannot Make a Clear Showing that he is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

As described above, in his Motion for Preliminary Injunction, Plaintiff characterizes the "irreparable harm" he is likely to suffer in the absence of the issuance of a preliminary injunction

as being "at peril of having CMPD publish his personal information each time he may be in a motor vehicle accident." Doc. 17, p. 15. As established herein: (1) The CMPD is no longer providing to the public DMV-349 crash reports containing DPPA protected personal information in the CMPD Records Management Division; and (2) Plaintiff's argument that he is at peril of having the CMPD publish his DPPA protected personal information in the event that he is ever involved in another reportable crash within the CMPD's jurisdiction falls woefully short of establishing an ongoing or future injury in fact that is "imminent" or "certainly impending," traceable to challenged conduct of the City, and that is likely to be redressed by a favorable judicial decision. In the interest of brevity, please refer to Section II.A.1., 2., and 3. hereinabove, pages 6 – 11.

**C. Plaintiff has Failed to Satisfy the Other Two Elements Necessary to Warrant the Entry of Preliminary Injunctive Relief**

**1. Plaintiff has Failed to Make a Clear Showing that the Balance of Equities Weighs in Favor of a Preliminary Injunction**

The entirety of Plaintiff's argument regarding his showing of this required element for obtaining injunctive relief states:

> The balance of hardship between the parties weighs in favor of a permanent injunction, where such relief is the only means available to Plaintiff and the putative class to prevent further publication of their information. Doc. 17, p. 18.

As an initial matter, Defendant's understanding is that Plaintiff is seeking a preliminary, as opposed to permanent, injunction as argued immediately above, and Defendant responds in accordance with this understanding. The above statement does not suffice for Plaintiff to make a clear showing that the balance of equities weighs in favor of a preliminary injunction. Moreover, the CMPD is no longer providing DMV-349 accident reports containing DPPA protected personal

information to members of the public. Thus, the balance of equities does not weigh in favor of the entry of a preliminary injunction.

### 2. Plaintiff has Failed to Make a Clear Showing that a Preliminary Injunction is in the Public Interest

The entirety of Plaintiff's argument regarding his showing of this required element for obtaining injunctive relief states:

> Likewise, it is in the public interest to prevent Defendants' (sic) unlawful practices as to persons who are not in the putative class in this action but who may be involved in collisions in the future. Doc. 17, p. 19.

This barebones statement does not establish a clear showing by Plaintiff that the entry of a preliminary injunction by the Court is in the public interest. In fact, this assertion does not even take into consideration that some collisions occur which are not reportable and thus, would not result in the preparation of a DMV-349 by a CMPD officer. Thus, Plaintiff has failed to establish that the entry of a preliminary injunction by this Court is in the public interest.

### Conclusion

For all of the foregoing reasons, Defendant, City of Charlotte, respectfully requests that Plaintiff's Motion for Preliminary Injunction be denied.

This the 18th day of November, 2020.

                CRANFILL SUMNER & HARTZOG LLP

              BY: /s/Stephanie H. Webster
                 Stephanie H. Webster, NC Bar #12164
                 Patrick H. Flanagan, NC Bar #17407
                 *Attorneys for Defendant*
                 P.O. Box 30787
                 Charlotte, NC 28230
                 Telephone (704) 332-8300
                 Facsimile (704) 332-9994
                 phf@cshlaw.com
                 swebster@cshlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2020, I electronically filed the foregoing **Defendant's Response and Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| J. David Stradley<br>Robert P. Holmes, IV<br>**White & Stradley, PLLC**<br>3105 Charles B. Root Wynd<br>Raleigh, NC 27612<br>919-844-0400<br>stradley@whiteandstradley.com<br>rob@whiteandstradley.com | John F. Bloss<br>Frederick L. Berry<br>**Higgins Benjamin, PLLC**<br>301 North Elm Street, Suite 800<br>Greensboro, NC 27401<br>366-273-1600<br>jbloss@greensborolaw.com<br>fberry@greensborolaw.com |
| Andrew H. Brown<br>James R. Faucher<br>**Brown, Faucher, Peraldo & Benson, PLLC**<br>822 North Elm Street, Suite 200<br>Greensboro, NC 27401<br>336-478-6000<br>drew@greensborolawcenter.com<br>james@greensborolawcenter.com | |

CRANFILL SUMNER & HARTZOG LLP

BY: /s/Stephanie H. Webster
Stephanie H. Webster, NC Bar #12164
*Attorneys for Defendant*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
swebster@cshlaw.com