UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-482-KDB-DSC

| | |
|---|---|
| JOHNATHAN S. HENSLEY, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHARLOTTE, a North Carolina municipal corporation,<br><br>Defendant. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Fed. R. Civ. Pro. 12(b)(1) and 12(c)** |

NOW COMES Defendant City of Charlotte, North Carolina, by and through undersigned counsel, and submits this Memorandum of Law in Support of Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and alternatively, Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant City of Charlotte moves the Court for an order dismissing each of Plaintiff's claims with prejudice and for an order staying these proceedings pending the Court's ruling on Defendant's instant Motions. In support, Defendant states as follows:

### I. INTRODUCTION

Plaintiff's action against the City of Charlotte ("City" or "Defendant") is subject to dismissal in its entirety because:

1. Plaintiff lacks Article III standing thereby depriving the Court of subject matter jurisdiction;

2. As a subordinate division of the State, the City is not a "person" and thus, is not subject to a private cause of action under the Drivers Privacy Protection Act ("DPPA"); and

3. Plaintiff does not allege and cannot show he received any solicitation following his traffic accident based upon a release of DPPA protected information by the City.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint in this matter on September 1, 2020. [Doc. 1], and Defendant filed its Answer on October 27, 2020. [Doc. 15]. Thereafter, Plaintiff filed a Motion for Preliminary Injunction and Memorandum of Law in Support. [Docs. 16, 17]. Defendant filed its Response and Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction on November 18, 2020. [Doc. 20], and Plaintiff replied on November 25, 2020. [Doc. 22]. On December 1, 2020, the Court denied Plaintiff's Motion for a Preliminary Injunction. [Doc. 23]. Plaintiff has not sought to certify the putative class pursuant to Rule 23 of the Federal Rules of Civil Procedure either as to monetary damages or injunctive relief.[1]

## III. STATEMENT OF FACTS

Defendant City of Charlotte is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina. *See* Doc. 1, ¶ 2. The Charlotte-Mecklenburg Police Department ("CMPD") is a component of the City. *Id.,* ¶ 3. North Carolina law enforcement officers, including CMPD officers, are required to document reportable vehicle crashes on a standard form promulgated by the North Carolina Department of Motor Vehicles ("NCDMV") known as a DMV-349. *Id.,* ¶ 27. A reportable crash is defined as one that results in death or injury to another human being, total property damage of $1000 or more, or property damage of any amount to a vehicle seized pursuant to N.C.G.S. § 20-28.3.[2] *Id.,* ¶ 21.

---

[1] The City notes that Plaintiff is a member of the Federal Rule of Civil Procedure 23(b)(2) injunctive relief class and subclass certified by this Court in *Gaston v LexisNexis Risk Sols., Inc.,* 483 F.Supp.3d 318, 344 (W.D.N.C. Sept. 2, 2020). *See* Doc. 1, ¶¶ 67 – 77; Doc. 17, p. 6.

[2] NCGS § 20-28.3 addresses seizure, impoundment, and forfeiture of motor vehicles for offenses involving impaired driving while license revoked or without license and insurance, and for felony speeding to elude arrest.

Pursuant to N.C.G.S. § 20-166.1(e), CMPD officers are required to investigate reportable accidents such as the one in which Plaintiff was involved. *Id.*, ¶ 25. North Carolina law requires any driver who is involved in a motor vehicle accident to produce his state-issued driver's license to the investigating officer. *Id.*, ¶ 26. When a DMV-349 has been completed by a N.C. law enforcement officer, it typically contains the following personal information about the drivers involved in the accident: name, date of birth, gender, residence address, and NCDMV driver's license number. *Id.*, ¶¶ 13 – 17, 43. At the time of Plaintiff's reportable vehicle accident on November 22, 2017, he had a NCDMV issued driver's license, and his driver's license number was included on the DMV-349 that was completed by the CMPD officer. *Id.*, ¶¶ 19, 34 – 35. Pursuant to the federal Drivers Protection Privacy Act, a "motor vehicle record" includes any record that pertains to an identification card issued by a department of motor vehicles, such as Plaintiff's N.C. driver's license. *Id.*, ¶¶ 15 – 18. *See also,* 18 U.S.C. § 2725(1).

For purposes of the DPPA, 18 U.S.C. §§ 2721 *et seq.*, "a subordinate division of the state like a city administrative unit is a state agency." *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F.Supp.3d 318, 348 (W.D.N.C. Sept. 2, 2020).[3] Thus, in interpreting the text of the DPPA as it pertains to North Carolina DMV-349 accident reports, there is no basis for treating another agency of the State, such as the City of Charlotte or the CMPD, any differently than the NCDMV is treated under the DPPA. *Id.* ("[T]he Court declines to find any basis either in the text of the statute or its purpose to treat the same accident report differently based on whether it is disclosed by the DMV or another agency of the State" such as the City of Charlotte, and "[A] city administrative unit is a state agency").

---

[3] *See* footnote 25, *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 348 (W.D.N.C. 2020). This case is referred to hereinafter as *Gaston*.

At least as early as 2007, the City began making completed CMPD DMV-349 forms available to the public in the CMPD Records Division. Doc. 1, ¶¶ 45 – 46. Also, since 2007, multiple people have come to the Records Division each business day to review DMV-349 reports, and Plaintiff asserts one or more of those people reviews each DMV-349 for marketing purposes. *Id.,* ¶ 49. In his Complaint, Plaintiff does not identify any member of the public who viewed the DMV-349 related to his November 22, 2017 accident report at the CMPD Records Division, and he does not assert that he received a marketing solicitation based upon a member of the public having viewed his DMV-349 at the CMPD Records Division. Doc. 1.

Beginning in 2007, the City contracted with PoliceReports US ("PRUS"), a company that was later purchased by LexisNexis Claims Solutions ("LexisNexis"). *Id.,* ¶ 50. The contracts required PRUS and LexisNexis to make DMV-349s available on a LexisNexis website ("the Website"). *Id.,* ¶ 51; Doc. 17, p. 2, footnote 2. The DMV-349s were made available for individual purchase (for example, by a person who needed a copy of his own accident report) and for bulk/subscription download of DMV-349s. Doc. 1, ¶ 52.

Pursuant to the explicit terms of the contracts at issue in this matter, the crash reports/DMV-349s were made available by the City to PRUS/LexisNexis "*subject to the obligations of federal law*." (emphasis in original). *See Gaston, supra,* 483 F.Supp.3d at 348 (W.D.N.C. Sept. 2, 2020).[4] Thus, in contracting to provide the DMV-349s to PRUS/Lexis/Nexis, "the City of Charlotte and

---

[4] The contracts referenced by Plaintiff in the instant case are the same contracts that were at issue in *Gaston v LexisNexis, supra. See* Doc. 17, p. 2, footnote 2.

4

CMPD have not violated the DPPA in any manner (because [PRUS/Lexis/Nexis] could have disclosed the Crash Reports only in accordance with the DPPA)."[5] *Id.*

Plaintiff's reportable motor vehicle crash at issue here took place on November 22, 2017 in the City of Charlotte. Doc. 1, ¶ 67 – 68. Therefore, pursuant to N.C.G.S. § 20-166.1(a), the CMPD had jurisdiction to investigate the crash, and a CMPD officer responded to investigate the accident. *Id.,* ¶ 68. The responding CMPD officer completed a DMV-349 which contained Plaintiff's name, date of birth, address, drivers license number, and telephone number. *Id.,* ¶ 71. After the DMV-349 was completed, a copy was placed at the counter of the CMPD Records Division and was available for inspection. *Id.,* ¶ 78.

Within a few days of Plaintiff's crash, a copy of the DMV-349 related to his accident was published on the PRUS/LexisNexis website. *Id.,* ¶ 81. Because Plaintiff's DMV-349 and personal information was on the PRUS/LexisNexis website, he received targeted direct mail solicitations from attorneys seeking to represent him in pursuing a claim arising from the vehicle accident. *Id.,* ¶¶ 82 – 83; Doc. 17, p. 4. Plaintiff stated in his Declaration (Doc. 17-2) in support of his Motion for Preliminary Injunction (Doc. 17) that he was attaching a solicitation he received from Attorney DeMayo following his November 22, 2017 crash. *See* Doc. 17-2, ¶ 12, pp. 3 – 4. However, Plaintiff's Declaration did not include a solicitation, or any part of a solicitation, he allegedly

---

[5] Plaintiff asserts in his Complaint, "Defendant is liable for the actions of PRUS/LexisNexis because:" PRUS/LexisNexis acts as Defendant's agent in disclosing DMV-349s on the LexisNexis website, Defendant has ratified PRUS/LexisNexis actions, and Defendant has engaged in a civil conspiracy to violate the DPPA with PRUS/LexisNexis." Doc. 1, ¶ 124. As noted above, this Court previously held in *Gaston, supra,* that "the City of Charlotte and CMPD have not violated the DPPA in any manner (because [PRUS/Lexis/Nexis] could have disclosed the Crash Reports only in accordance with the DPPA)." Plaintiff repeatedly cites and relies upon the *Gaston* Order in this litigation. *See Doc.* 17.

5

received from Attorney DeMayo or any other attorney. Doc. 17-2, pp. 1 – 4.[6] Significantly, Plaintiff does not allege in his Complaint that he received an attorney solicitation, any type of targeted direct mail solicitation, or any other communication whatsoever, following his November 22, 2017 vehicle accident based upon a copy of his DMV-349 accident report having been made available at the CMPD Records Division. Doc. 1.[7] Further, the City is "no longer making DMV-349 accident reports containing DPPA protected personal information available to the public." *See* Doc. 20 at 9-10; Doc. 20-1.[8]

---

[6] The DPPA defines protected "personal information" as information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), and telephone number. *See* 18 U.S.C. § 2725(3).

[7] Indeed, Plaintiff's evidence reflects that by contracting with PRUS and LexisNexis to disseminate the accident reports to interested parties, CMPD benefited by having less foot traffic at its own facilities. To facilitate the public's ability to access the reports, CMPD's website included a link to the LexisNexis portal. *See* Doc. 17, p. 2, footnote 2.

[8] Plaintiff also asserts the City has failed to maintain records identifying the persons or entities that have received DMV-349 accident reports and the permitted purpose for which the recipient would use the information. Doc. 1, ¶¶ 58-59, 63. However, pursuant to Plaintiff's discovery requests, the City provided Plaintiff with a list of every person or entity that purchased a DMV-349 crash report from PRUS/LexisNexis from January 1, 2015 through a several year period. Nevertheless, for purposes of Plaintiff's case, non-maintenance of such records is immaterial inasmuch as "the DPPA does not provide a private right of action for the absence of the required records." *Gaston, supra,* 483 F. Supp. 3d 318, 350 (W.D.N.C. 2020)("The limits of the private cause of action under the DPPA is found in section 2724(a). That section only makes liable any person who 'knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the statute] ....' 18 U.S.C. § 2724 (a). The failure to obtain and keep records for five years identifying each person or entity that receives information and the permitted purpose for which the information will be used under 18 U.S.C. § 2721(c) is not encompassed by that description….").

## IV. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Clinton v. Brown,* No 3:15-CV-48, 2015 WL 4941799, at *2 (W.D.N.C. Aug. 19, 2015). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union,* 192 F.3d 417, 422 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quotation omitted); *see also, Goldfarb v. Mayor & City Council of Baltimore,* 791 F.3d 500, 506 – 07 (4th Cir. 2015) ("When a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment). Indeed, as explained by this Court:

> The moving party should prevail on a motion to dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Moreover, on a factual challenge to the court's subject matter jurisdiction, the Court is not limited to the four corners of the Complaint and is free to weigh evidence and determine its power to hear the case. *See Schneider v. Donaldson Funeral Home, P.A.*, 733 F. App'x 641, 644 (4th Cir. 2018); *In re KBR, Inc., Burn Pit Litig.,* 744 F.3d 326, 333-34 (4th Cir. 2014) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

*Davis v. Am. Airlines*, No. 3:19-CV-44-MOC-DSC, 2019 WL 2719909, at *3 (W.D.N.C. June 28, 2019), *aff'd sub nom. Davis v. Am. Airlines, Inc.*, 792 F. App'x 265 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 256, 208 L. Ed. 2d 27 (2020).

7

### B. Rule 12(c) Standard

A motion for judgment on the pleadings is determined by the same standard applied to a 12(b)(6) motion to dismiss for failure to state a claim. *Burbach Broadcasting Co. of Delaware v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir. 2002). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## V. ARGUMENT

### A. Plaintiff Lacks Article III Standing Thereby Depriving the Court of Subject Matter Jurisdiction

As demonstrated herein, Plaintiff lacks standing to pursue this lawsuit. The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. Therefore, standing to sue "ensure[s] that federal courts do not exceed their authority." *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016)(No principle

is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to hear actual cases or controversies). The "irreducible constitutional minimum" of standing consists of three elements, which Plaintiff as the party invoking federal jurisdiction, bears the burden of establishing:

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Spokeo, supra,* 136 S. Ct. at 1547, *citing Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 – 61, 112 S.Ct. 2130 (1992); *Friends of the Earth Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180 – 181, 120 S.Ct. 693 (2000).

Plaintiff is entirely unable to meet his burden of establishing standing based upon an injury in fact, traceable to challenged conduct of the City, that is likely to be redressed by a favorable judicial decision. Significantly, Plaintiff did not allege in his Complaint that he received an attorney solicitation, any type of targeted direct mail solicitation, or any other communication whatsoever, following his vehicle accident based upon a copy of his DMV-349 allegedly having been made available at the CMPD Records Division. [Doc. 1]. Indeed, Plaintiff is unable to establish this because there is no record of who may have accessed DMV-349 reports at the CMPD Records Department.[9] Doc. 1, ¶¶ 59 – 63. Quite to the contrary, Plaintiff made it abundantly clear the solicitation he received was <u>not</u> based upon an individual or entity obtaining his DMV-349 accident report from the Records Division of the CMPD. For example, Plaintiff plead as follows: Within a few days of Plaintiff's crash, a copy of the DMV-349 related to his accident was published

---

[9] At the relevant time, the City made NC DMV-349 accident reports available to the public as public records pursuant to the N.C. Public Records Act, N.C.G.S. § 20-166.1(i), and a 2005 opinion of the North Carolina Attorney General. The N.C. Public Records Act prohibits a public agency from requiring a requester of public records to disclose the purpose or motive for the request. *See* N.C.G.S. § 132-6(b). Effective November 16, 2020, Defendant discontinued providing copies of DMV-349 accident reports to the general public in its Records Division. *See* Doc. 20 at pp. 9-10; Doc. 20-1.

on the PRUS/LexisNexis website. Doc. 1*.,* ¶ 81. Because Plaintiff's DMV-349 and personal information was on the PRUS/LexisNexis website, he received targeted direct mail solicitations from attorneys seeking to represent him in pursuing a claim arising from the vehicle accident. *Id.,* ¶¶ 82 – 83; Doc. 17, p. 4.

As previously ruled by this Court, the City and CMPD did not violate the DPPA by knowingly *disclosing* DPPA protected personal information to PRUS/LexisNexis because the contract between the City and PRUS/LexisNexis required that PRUS/LexisNexis use the information "*subject to the obligations of federal law*." (emphasis in original). *See Gaston, supra,* 483 F. Supp.3d at 348 (W.D.N.C. Sept. 2, 2020). Therefore, the solicitation of Plaintiff by an attorney or attorneys who received his DMV-349 from the PRUS/LexisNexis website cannot, as a matter of law, show Plaintiff suffered an injury in fact that is fairly traceable to the City and which is likely to be redressed by a favorable judicial decision. *Spokeo, supra,* 136 S. Ct. 1540, 1547 (2016). Under the circumstances of this case, Plaintiff simply cannot show that the City knowingly released his DPPA protected information for an improper purpose. Consequently, Plaintiff lacks Article III standing, and as a result, the Court lacks subject matter jurisdiction over this lawsuit. *Id*. Indeed, as established below in Section V.B., it is legally impossible for Plaintiff's claims against the City to be redressed by a favorable judicial decision because the DPPA precludes a private cause of action against the City.

### B. Alternatively, as a Subordinate Division of the State and not a "Person," the City is not Subject to a Private Cause of Action Under the Drivers Privacy Protection Act

The DPPA provides for liability only against "persons." 18 U.S.C.§ 2722(a) states "[i]t shall be unlawful for any ***person*** knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." (emphasis added). *See* 18 U.S.C. § 2722(a), *Procurement for unlawful purpose*. Further, Section 2724

10

4812-7701-5790, v. 1

provides for a civil action by a person aggrieved against "a *person* who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter. . ." (emphasis added). *Id.,* § 2724(a), *Civil Action*. The term "person" is defined in the DPPA as "an individual, organization or entity, but does *not include a State or agency thereof.*" 18 U.S.C. § 2725(2) (emphasis added). Because civil actions against States and their agencies are specifically precluded based upon the exclusion of "State or agency thereof" from the definition of "person" in the DPPA, the City of Charlotte is not subject to liability in a civil action based upon the plain language of the Act.[10] *See* 18 U.S.C. §§ 2725(2), 2724(a); *see also, Gaston, supra*, 483 F. Supp. 3d 318, 350, n. 29 (W.D.N.C. 2020)("Similarly, any failure by a state or state agency, including a DMV *or city acting within the scope of its governmental authority*, is not subject to a private right of action under section 2724(a) because a "State or agency thereof" is not defined as a "person" under the DPPA, although they are plainly subject to the DPPA's disclosure restrictions described in section 2721(a) and subject to a potential civil penalty under 18 U.S.C. § 2723.")(emphasis added).

---

[10] Even if the City were considered a "person" subject to a private cause of action under the DPPA, which it is not, the City nevertheless would not be liable to Plaintiff or any putative class member. 18 U.S.C.§ 2722(a) states "[i]t shall be unlawful for any *person knowingly* to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." (emphasis added). Because the City disclosed DMV-349 accident reports to LexisNexis pursuant to explicit contractual terms that required LexisNexis to use the information "*subject to the obligations of federal law*," it cannot be argued that the City *knowingly* obtained or disclosed protected DPPA personal information for any use not permitted under section 2721(b) of the Act. *See Gaston, supra,* 483 F. Supp.3d at 348 (W.D.N.C.)("In contracting with PRUS to authorize it to make Crash Reports available *subject to the obligations of federal law*, the City of Charlotte and CMPD have not violated the DPPA in any manner (because [PRUS/LexisNexis] could have disclosed the Crash Reports only in accordance with the DPPA")(emphasis in original). As established herein, the contracts referenced by Plaintiff in the instant lawsuit are the same contracts that were at issue in *Gaston v LexisNexis, supra. See* Doc. 17, p. 2, footnote 2.

11

Case 3:20-cv-00482-KDB-DSC   Document 32-1   Filed 06/11/21   Page 11 of 14
4812-7701-5790, v. 1

Significantly, Plaintiff concedes that a cause of action under the DPPA may be brought only against "a person." Doc. 17, p. 8. Indeed, counsel for the City have been unable to locate any DPPA action against a North Carolina municipality or County other than the one Plaintiff attempts to fashion here contrary to the plain text of the DPPA. There simply is no interpretation of the text of the DPPA that supports the existence of a private cause of action against a North Carolina municipality such as the City of Charlotte, and the only relevant precedent has concluded that such a cause of action will not lie. *Gaston, supra*, 483 F. Supp. 3d at 348 – 350.

The best reading of a statute harmonizes its provisions, making sense of more rather than less text. The main provisions of the DPPA create a set of obligations for state department of vehicles (DMVs), and then lists fourteen exemptions. *See* 18 U.S.C. §2721. The Act permits local government agencies to share personal information. The DPPA allows disclosure "for use by *any government agency*, including any court or law enforcement agency, in carrying out its functions, or any private person or entity *acting on behalf of a Federal, State, or local agency* in carrying out its functions." This section clearly equates "government agency," a general term, with a specific list that names "local" agencies. 18 U.S.C. 2721(b)(1) (emphasis added);[11] *see also id.,* (b)(4). This language of substantive exclusion supports an inference that the definitional terms "State or agency thereof" also excludes local agencies, including municipalities, from those entities against which a private cause of action will lie.

This Court, in an opinion authored by the Honorable U.S. District Court Judge Kenneth D. Bell, has concluded that for purposes of the DPPA, 18 U.S.C. §§ 2721 *et seq.,* "a subordinate division of the state like a city administrative unit is a state agency." *See Gaston*, *supra,* 483

---

[11] The context of the term "local" in Section 2721(b) reflects Congress' concern to protect local entities from liability, not to impose liability.

4812-7701-5790, v. 1

F.Supp.3d at 348, n. 25 (W.D.N.C.); *See also, Smith v. Hefner,* 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952). Thus, in interpreting the text of the DPPA as it pertains to North Carolina DMV-349 accident reports, there is no basis for treating another agency of the State, such as the City of Charlotte or the CMPD, any differently than the NCDMV is treated under the DPPA. *Id.* ("[T]he Court declines to find any basis either in the text of the statute or its purpose to treat the same accident report differently based on whether it is disclosed by the DMV or another agency of the State" such as the City of Charlotte, and "[A] city administrative unit is a state agency"). Because the plain language of the DPPA does not authorize a private right of action against the State or an agency thereof, there is no cognizable cause of action against the City such as that Plaintiff seeks to pursue here. Rather, the only remedies available against a State or agency thereof are set forth in 18 U.S.C. § 2723(b).

## CONCLUSION

For all of the foregoing reasons, Defendant, City of Charlotte, respectfully requests that the Court grant Defendant's Motion to Dismiss or alternatively, grant Defendant's Motion for Judgment on the pleadings and dismiss each of Plaintiff's claims with prejudice.

This the 11th day of June, 2021.

**CRANFILL SUMNER LLP**

BY: /s/Stephanie H. Webster
Stephanie H. Webster, NC Bar #12164
Patrick H. Flanagan, NC Bar #17407
*Attorneys for Defendant*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
phf@cshlaw.com
swebster@cshlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2021 I electronically filed the foregoing **Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss and Motion for Judgment on the Pleadings** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| J. David Stradley<br>Robert P. Holmes, IV<br>**White & Stradley, PLLC**<br>3105 Charles B. Root Wynd<br>Raleigh, NC 27612<br>919-844-0400<br>stradley@whiteandstradley.com<br>rob@whiteandstradley.com | John F. Bloss<br>Frederick L. Berry<br>**Higgins Benjamin, PLLC**<br>301 North Elm Street, Suite 800<br>Greensboro, NC 27401<br>366-273-1600<br>jbloss@greensborolaw.com<br>fberry@greensborolaw.com |
| Andrew H. Brown<br>James R. Faucher<br>**Brown, Faucher, Peraldo & Benson, PLLC**<br>822 North Elm Street, Suite 200<br>Greensboro, NC 27401<br>336-478-6000<br>drew@greensborolawcenter.com<br>james@greensborolawcenter.com | |

                                                **CRANFILL SUMNER LLP**

BY:   /s/Stephanie H. Webster
          Stephanie H. Webster, NC Bar #12164
          *Attorneys for Defendant*
          P.O. Box 30787
          Charlotte, NC 28230
          Telephone (704) 332-8300
          Facsimile (704) 332-9994
          swebster@cshlaw.com