## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:20-CV-00482-KDB-DSC

| | |
|---|---|
| **JOHNATHAN S. HENSLEY,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **CITY OF CHARLOTTE,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Defendant City of Charlotte's ("City") Motion to Dismiss Plaintiff's Complaint and Motion for Judgment on the Pleadings (Doc. No. 32) and Motion to Strike (Doc. No. 40). The Court has carefully considered these motions and the parties' memoranda in support and in opposition and finds that Plaintiff has not plausibly alleged in the relevant pleadings that he was the victim of a wrongful disclosure of his personal information by the City in violation of the Driver's Privacy Protection Act ("DPPA,"). Thus, the Court will **GRANT** the City's motion for judgment on the pleadings. In light of that ruling, the Court need not and does not reach the City's jurisdictional challenge to Plaintiff's Complaint in its motion to dismiss or its motion to strike and will accordingly **DENY** those motions without prejudice or as moot.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). A motion for judgment on the pleadings is governed by the standard applicable to a motion to dismiss under Rule 12(b)(6). *See id.* at 405; *Shipp v. Goldade*, No. 5:19-CV-00085-KDB-DCK, 2020 WL 1429248, at *1

1

(W.D.N.C. Mar. 19, 2020). A Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

In analyzing a Rule 12 motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). In particular, when considering a Rule 12(c) motion, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc*., No. 3:13 cv 679, 2016 WL 4706931, at *1, 2016 U.S. Dist. LEXIS 121043, at *3 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co*., 164 F. App'x 395, 396-97 (4th Cir. 2006)).

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and

Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

## II. FACTS AND PROCEDURAL HISTORY

Defendant City of Charlotte is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina. *See* Doc. 1, ¶ 2. The Charlotte-Mecklenburg Police Department ("CMPD") is a component of the City. *Id.,* ¶ 3. North Carolina law enforcement officers, including CMPD officers, are required to document reportable vehicle crashes on a standard form promulgated by the North Carolina Department of Motor Vehicles ("NCDMV") known as a DMV-349. *Id.,* ¶ 27. When a DMV-349 has been completed by a N.C. law enforcement officer, it typically contains the following personal information about the drivers involved in the accident: name, date of birth, gender, residence address, and NCDMV driver's license number. *Id.,* ¶¶ 13 – 17, 43.

Plaintiff Johnathan Hensley was involved in a motorcycle accident in Charlotte, North Carolina on November 22, 2017. The resulting DMV-349 prepared by the responding CMPD officer (the "Accident Report") contained Mr. Hensley's personal information including his address, showing a nine-digit zip code; his date of birth; his North Carolina driver's license number; and his telephone number. *Id.,* ¶ 71. Hensley alleges that he did not provide his driver's

license number or nine-digit zip code to the investigating CMPD officer, *id*., ¶ 70, so he contends that the officer necessarily obtained this information from NCDMV records.

Beginning in 2007 (or earlier), the City has placed one or more unredacted copies of each DMV-349 "recently received" on the front desk of its records division so that the forms are available to the public. Doc. 1, ¶¶ 45 – 46. Plaintiff alleges that the City is aware that multiple people come to the Records Division each business day to review DMV-349 reports, including for marketing purposes. *Id.,* ¶ 49. However, the City does not maintain any log or record identifying which accident reports have been looked at, the persons or entities that have reviewed any accident reports or the purpose for which any report was reviewed. *Id*., ¶¶ 59, 63.

Also, the City contracted with PoliceReports US ("PRUS"), a company that was later purchased by LexisNexis Claims Solutions ("LexisNexis"), to make DMV-349s available to the public on a LexisNexis website for viewing or to download. *Id.,* ¶ 50-51. Pursuant to that contract, DMV- 349s were made available by the City to PRUS/LexisNexis "subject to the obligations of federal law." *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F.Supp.3d 318, 348 (W.D.N.C. 2020).

Plaintiff contends that the City made copies of his Accident Report containing his personal information available to the public at both the CMPD records division and through the LexisNexis website in violation of the DPPA. *Id*., ¶¶ 78-81. Beyond the allegation that the Accident Report was "available to the public," the Complaint does not allege that a member of the public who viewed Hensley's Accident Report at the records division solicited Plaintiff. *Id*., ¶ 80. Rather, the Complaint specifically alleges that "through [the City's] contract with PRUS/LexisNexis and the Website … Plaintiff's name, address and driver's license number [was unlawfully disclosed] to one or more internet users who obtained the name to use in targeted direct mail solicitation." *Id*., ¶¶ 82, 128.

4

Based on this alleged disclosure, Plaintiff filed this action on September 1, 2020 seeking liquidated damages and injunctive relief under the DPPA for himself and a putative class[1, 2] of others who Plaintiff claims were similarly wronged. *Id.*, ¶¶ 104, 116-117. After Defendant filed its Answer on October 27, 2020, Doc. No. 15, Plaintiff filed a Motion for Preliminary Injunction, Doc. No. 16, which the Court denied on December 1, 2020. Doc. 23. In the course of that briefing, it was revealed that the City is "no longer making DMV- 349 accident reports containing DPPA protected personal information available to the public." *See* Doc. 20 at 9-10; Doc. 20-1.

## III. DISCUSSION

The City argues that judgment should be entered in its favor or this action should be dismissed on several grounds, including that 1) Plaintiff does not allege and cannot show he received any solicitation following his traffic accident based upon an unlawful release of DPPA protected information by the City; 2) as a subordinate division of the State, the City is not a "person" and thus is not subject to a private cause of action under the DPPA; and 3) Plaintiff lacks

---

[1] Plaintiff has not yet moved to certify a class in this case. While the Court would (if this case were allowed to continue) carefully and independently consider any motion seeking class certification, the Court notes that even if the putative class members could be "ascertained" given the absence of any record of whose accident reports may have been disclosed in person, the lack of such information would make a showing of commonality and typicality challenging. Also, in a recently concluded matter raising similar claims under the DPPA, the Court refused to certify a money damages class because, in considering "the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D), the Court took into account Defendants' right to challenge whether individual class members would be entitled to a statutory damages award. The same consideration would appear to be applicable here, if not more so. *See Gaston*, 483 F.Supp.3d at 345. Finally, certification of an "injunction" class, which was permitted in *Gaston*, would not likely be applicable in this case because the City admittedly no longer engages in the conduct that is the subject of the Complaint.

[2] Plaintiff is also a member of the Federal Rule of Civil Procedure 23(b)(2) injunctive relief class and subclass certified by this Court in *Gaston* so he cannot, to the extent applicable here, pursue a class action or seek relief which has been released by the court approved settlement in that action. *See* Doc. 1, ¶¶ 67 – 77; Doc. No. 17, p. 6.

Article III standing thereby depriving the Court of subject matter jurisdiction. Because the Court agrees with the City that the pleadings do not plausibly allege a viable DPPA claim, it need not rely on or decide the remaining arguments.

As discussed above, in ruling on a motion for judgment on the pleadings the Court must limit its consideration to the pleadings and attached exhibits, relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic." *See Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Allegations and proffered evidence outside those bounds should not be considered. *See Riley v. Cephas*, No. 7:20-CV-00046-M, 2020 WL 2441416, at *6 (E.D.N.C. May 12, 2020) (Elaboration that is not made in Plaintiff's complaint, but rather appears in a response in opposition to Defendants' motion to dismiss, must be disregarded by the Court since a Rule [12(c)] motion challenges the sufficiency of the pleadings only). Thus, in ruling on the City's Rule 12(c) motion, the Court will limit its review accordingly.

In the Complaint, Plaintiff alleges that the City made his accident report available to the public in two ways – through the PRUS/Lexis website and "on the counter" at the CMPD records office. The Court has previously ruled in *Gaston* that the City and CMPD did not violate the DPPA by knowingly disclosing DPPA protected personal information to PRUS/LexisNexis because the contract between the City and PRUS/LexisNexis required that PRUS/LexisNexis use the information "*subject to the obligations of federal law.*" (emphasis in original). *See Gaston,* 483 F. Supp.3d at 348.[3] Therefore, Plaintiff's allegations that he received marketing solicitations from law firms as a result of the improper disclosure of his personal information on the

---

[3] The contracts referenced by Plaintiff in this case are the same contracts that were at issue in *Gaston*, *see* Doc. 17, p. 2, footnote 2, and the Court may take judicial notice of its prior ruling. *See Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000) (a court may take judicial notice of facts from a prior judicial proceeding when there is no dispute as to their accuracy).

6

PRUS/LexisNexis website does not plausibly state a DPPA claim against the City. And, with respect to the potential disclosure of Plaintiff's accident report from the CMPD counter, there is admittedly no record of which accident reports were viewed by any member of the public nor has Plaintiff specifically alleged – *in the relevant pleadings[4]* - that he received a solicitation as a result of the disclosure of DPPA protected personal information from that physical location rather than the PRUS/LexisNexis website. So, Plaintiff has failed to plausibly plead a DPPA violation against the City, and the City is entitled to judgment in its favor on the pleadings.

Having determined that the City is entitled to judgment on the pleadings based on the failure to plausibly allege a viable DPPA claim, the Court need not decide if the City is a "person" that may be found liable under the DPPA. While the Court ruled in *Gaston* that the City was not a "person" under 18 U.S.C. §§ 2725(2) because in North Carolina a subordinate division of the state like a city administrative unit is considered a state agency (which is exempted from the definition), *see Gaston*, 483 F.Supp.3d at 348, that issue was not directly before the Court in *Gaston*. Although the Court continues to question whether there is a compelling basis either in the text of the statute

---

[4] To be sure, Plaintiff makes this allegation in its legal memorandum in opposition to the City's motion, Doc. No. 37, but the cited paragraphs of the Complaint do not support this allegation and the declarations attached to Plaintiff's Supplemental Memorandum, Doc. No. 38, may not be considered in ruling on a motion for judgment on the pleadings. (Also, the Court notes that the declarations are speculative and internally inconsistent in describing how the law firm solicitation might have come to Plaintiff. The alleged source, Digital Solutions, says that it gathers reports "in a variety of ways" and it is only its President's "best recollection" in July 2021 that from September 2017 to the end of the year it accessed crash reports from CMPD by gathering hard copies from the department. Significantly, however, Digital Solutions does not say that it provided actual accident reports to clients, but instead says that it takes information from the reports which it puts into an excel spreadsheet format that is its product. *See* Doc. No. 38-1. The Farrin law firm declaration in turn *denies* that it received any spreadsheets from Digital Solutions but instead claims that it prepared its own internal spreadsheets from actual accident reports. *See* Doc. No. 38-2 at ¶ 6. Finally, Plaintiff alleges that he received a copy of his accident report from the law firm (although it is not attached to his declaration) so ultimately it is unclear if the law firm in fact had Plaintiff's accident report or where it came from.)

or its purpose to treat liability for the improper disclosure of the same accident report differently based on whether it is disclosed by the North Carolina DMV or another agency of the State down the street such as the City of Charlotte, there is no guiding authority in this circuit and the weight of authority outside the circuit holds that a city can be a "person" under the DPPA (albeit in cases in which the issue was either conceded or arose in the context of vicarious rather than direct municipal liability, which was not found). *See, e.g.*, *Truesdell v. Thomas*, 889 F.3d 719, 724 (11th Cir. 2018), *Orduno v. Pietrzak*, No. CV 14-1393 ADM/DTS, 2017 WL 4354686 (D. Minn. Sept. 29, 2017); *Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950 (D. Minn. July 15, 2016); *Schierts v. City of Brookfield*, 868 F. Supp. 2d 818 (E.D. Wis. 2012). Therefore, the Court will not rely here on its *dicta* in *Gaston* nor decide whether the City is a "person" who is potentially liable in a civil action under the DPPA.

Finally, the Court need not and does not reach the City's jurisdictional challenge to the Complaint. The City's grounds for its position that Plaintiff lacks Article III standing under *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) – that he has not established an injury in fact, traceable to challenged conduct of the City, that is likely to be redressed by a favorable judicial decision – is in many ways similar to its argument in support of its motion for judgment on the pleadings. However, the evidence which the Court may properly consider in ruling on the Rule 12(b)(1) motion is different and might include the evidentiary declarations related to the Farrin law firm discussed above. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 506 – 07 (4th Cir. 2015) ("When a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment). Accordingly, having determined that Plaintiff is not entitled to proceed based

8

on the inadequacy of the pleadings, the Court declines to decide if the City's jurisdictional challenge should be resolved facially or factually and if factually whether the equivocal declarations discussed above are sufficient to establish Plaintiff's standing to pursue this action.[5]

---

[5] Plaintiff's, or perhaps more accurately his counsel's, continued ardor for the claims being pursued in this action is puzzling. Beyond the unlikelihood that a class could be properly certified as discussed above, there is no need for injunctive relief in light of the injunction order entered in *Gaston* and the fact that the City no longer makes accident reports available in person. And, even if the case was permitted to go forward, it is unlikely that the City could be held liable for money damages based on the well-established law that qualified immunity protects municipalities and government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gaston*, 483 F. Supp. 3d at 348. Indeed, it appears to be undisputed that until *Gaston* the City made NC DMV-349 accident reports available to the public as public records pursuant to the N.C. Public Records Act, N.C.G.S. § 20-166.1(i) pursuant to a specific 2005 opinion of the North Carolina Attorney General which instructed the City to do so. In sum, while the Court will of course conduct future proceedings, if any, in this action carefully and impartially and with due regard to the arguments of the parties, it appears that there are substantial hurdles to any meaningful recovery for the Plaintiff on his claims.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The City's Motion for Judgment on the Pleadings (Doc. No. 32) is **GRANTED;**

2. The City's Motion to Dismiss (Doc. No. 32) is **DENIED** without prejudice;

3. The City's Motion to Strike (Doc. No. 40) is **DENIED** as moot; and

4. The Clerk is directed to close this matter in accordance with this Order, mooting the Parties' pending motion to extend certain scheduling order deadlines (Doc. No. 42).

**SO ORDERED ADJUDGED AND DECREED.**

Signed: August 4, 2021

Kenneth D. Bell
United States District Judge

10