IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00482-KDB-DSC

| | |
|---|---|
| JOHNATHAN S. HENSLEY, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHARLOTTE, <br><br> Defendant. | **ORDER** |

**THIS MATTER** is again before the Court on Defendant City of Charlotte's ("City") Motion to Dismiss Plaintiff's Complaint and Motion for Judgment on the Pleadings (Doc. No. 32), following a ruling of the Fourth Circuit Court of Appeals instructing this Court to decide the threshold issue of whether Plaintiff has Article III standing to pursue this action prior to considering the merits of the City's Motion for Judgment on the Pleadings. *Hensley v. City of Charlotte*, No. 21-2308, 2023 WL 1990298, at *2 (4th Cir. Feb. 14, 2023) ("A federal court's subject matter jurisdiction is a threshold question that always must be addressed before passing on the merits of a case, even where the merits question is more straightforward."); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).

The Court has carefully re-considered these motions and the parties' memoranda in support and in opposition and finds that Plaintiff lacks standing to move forward with this action because he has not alleged in the relevant pleadings that his injury was the result of a wrongful disclosure of his personal information by the City in violation of the Driver's Privacy Protection Act ("DPPA"). *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring that injury be "fairly traceable to the challenged action of the defendant"). Thus, having concluded that the "irreducible"

1

requirement of Article III standing has not been met, "the court cannot proceed at all in [this] cause" and the "only function remaining to the court is that of announcing" the absence of jurisdiction "and dismissing the cause."[1] *See Hensley*, 2023 WL 1990298, at *1, quoting *B.R. v. F.C.S.B.*, 17 F.4th 485, 492 (4th Cir. 2021).

## I.     LEGAL STANDARD

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

More specifically, Federal courts are limited by Article III of the United States Constitution to deciding actual "cases" or "controversies." U.S. Const. art. III § 2. If a plaintiff lacks standing, then there is no case or controversy, and the court lacks subject-matter jurisdiction over his

---

[1] Alternatively, in the event that it is found that Plaintiff has standing, then the Court would grant Defendant's Motion for Judgment on the Pleadings for the reasons stated in its previous Order. *See* Doc. No. 44.

claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. 330 at 338. Indeed, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (to establish injury in fact plaintiff's allegations must be sufficient to show he suffered a concrete harm).

## II. FACTS AND PROCEDURAL HISTORY

Defendant City of Charlotte is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina. *See* Doc. 1, ¶ 2. The Charlotte-Mecklenburg Police Department ("CMPD") is a component of the City. *Id.,* ¶ 3. North Carolina law enforcement officers, including CMPD officers, are required to document reportable vehicle crashes on a standard form promulgated by the North Carolina Department of Motor Vehicles ("NCDMV") known as a DMV-349. *Id.,* ¶ 27. When a DMV-349 has been completed by a N.C. law enforcement officer, it typically contains the following personal information about the drivers involved in the accident: name, date of birth, gender, residence address, and NCDMV driver's license number. *Id.,* ¶¶ 13 – 17, 43.

Plaintiff Johnathan Hensley was involved in a motorcycle accident in Charlotte, North Carolina on November 22, 2017. The resulting DMV-349 prepared by the responding CMPD officer (the "Accident Report") contained Mr. Hensley's personal information including his address, showing a nine-digit zip code; his date of birth; his North Carolina driver's license number; and his telephone number. *Id.*, ¶ 71. Hensley alleges that he did not provide his driver's

3

license number or nine-digit zip code to the investigating CMPD officer, *id*., ¶ 70, so he contends that the officer necessarily obtained this information from NCDMV records.

Beginning in 2007 (or earlier), the City has placed one or more unredacted copies of each DMV-349 "recently received" on the front desk of its records division so that the forms are available to the public. Doc. 1, ¶¶ 45 – 46. Plaintiff alleges that the City is aware that multiple people come to the Records Division each business day to review DMV-349 reports, including for marketing purposes. *Id.,* ¶ 49. However, the City does not maintain any log or record identifying which accident reports have been looked at, the persons or entities that have reviewed any accident reports or the purpose for which any report was reviewed. *Id*., ¶¶ 59, 63.

Also, the City contracted with PoliceReports US ("PRUS"), a company that was later purchased by LexisNexis Claims Solutions ("LexisNexis"), to make DMV-349s available to the public on a LexisNexis website for viewing or to download. *Id.,* ¶ 50-51. Pursuant to that contract, DMV- 349s were made available by the City to PRUS/LexisNexis "subject to the obligations of federal law." *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F.Supp.3d 318, 348 (W.D.N.C. 2020).

Plaintiff contends that the City made copies of his Accident Report containing his personal information available to the public at both the CMPD records division and through the LexisNexis website in violation of the DPPA. *Id*., ¶¶ 78-81. Beyond the allegation that the Accident Report was "available to the public," the Complaint does not allege that a member of the public who viewed Hensley's Accident Report at the records division solicited Plaintiff. *Id*., ¶ 80. Rather, the Complaint specifically alleges that "through [the City's] contract with PRUS/LexisNexis and the Website … Plaintiff's name, address and driver's license number [was unlawfully disclosed] to one or more internet users who obtained the name to use in targeted direct mail solicitation." *Id*., ¶¶ 82, 128.

Based on this alleged disclosure, Plaintiff filed this action on September 1, 2020, seeking liquidated damages and injunctive relief under the DPPA for himself and a putative class [2] of others who Plaintiff claims were similarly wronged. *Id*., ¶¶ 104, 116-117. After Defendant filed its Answer on October 27, 2020, Doc. No. 15, Plaintiff filed a Motion for Preliminary Injunction, Doc. No. 16, which the Court denied on December 1, 2020. Doc. 23. In the course of that briefing, it was revealed that the City is "no longer making DMV- 349 accident reports containing DPPA protected personal information available to the public." *See* Doc. 20 at 9-10; Doc. 20-1.

### III. DISCUSSION

The City argues that judgment should be entered in its favor or this action should be dismissed on several grounds, including that 1) Plaintiff does not allege and cannot show he received any solicitation following his traffic accident based upon an unlawful release of DPPA protected information by the City; 2) as a subordinate division of the State, the City is not a "person" and thus is not subject to a private cause of action under the DPPA; and 3) Plaintiff lacks Article III standing thereby depriving the Court of subject matter jurisdiction. As instructed by the Court of Appeals, the Court will limit its discussion to the issue of standing.

As described above, to have standing Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. 330 at 338. Plaintiff alleges that he suffered an injury based on receiving solicitations for legal services following his motorcycle

---

[2] Plaintiff is also a member of the Federal Rule of Civil Procedure 23(b)(2) injunctive relief class and subclass certified by this Court in *Gaston* so he cannot, to the extent applicable here, pursue a class action or seek relief which has been released by the court approved settlement in that action. *See* Doc. 1, ¶¶ 67 – 77; Doc. No. 17, p. 6.

accident and that his injury can be redressed with monetary damages if his claim is successful. However, the Complaint fails to allege that Plaintiff's injury is "traceable" to the City's alleged wrongful conduct.

In the Complaint, Plaintiff alleges that the City made his accident report available to the public in two ways – through the PRUS/Lexis website and "on the counter" at the CMPD records office. The Court has previously ruled in *Gaston* that the City and CMPD did not violate the DPPA by knowingly disclosing DPPA protected personal information to PRUS/LexisNexis because the contract between the City and PRUS/LexisNexis required that PRUS/LexisNexis use the information "subject to the obligations of federal law." (emphasis in original).[3] *See Gaston,* 483 F.Supp.3d at 348. Thus, Plaintiff's standing depends on an allegation that he suffered his injury from a disclosure of Plaintiff's accident report from the CMPD counter. Again, however, the City maintains no record of which accident reports were viewed by any member of the public nor has Plaintiff alleged in the Complaint that he received a solicitation as a result of the disclosure of DPPA protected personal information from the CMPD counter rather than the PRUS/LexisNexis website.

In defense of the City's motion, Plaintiff attached declarations to Plaintiff's Supplemental Memorandum, Doc. No. 38, which he contends support his standing arguments. The Court disagrees. Even viewing the declarations through the lens of the lenient 12(b)(6) standard, they are wholly speculative and internally inconsistent in describing how the law firm solicitation might have come to Plaintiff. The alleged source, Digital Solutions, says that it gathers reports "in a

---

[3] The contracts referenced by Plaintiff in this case are the same contracts that were at issue in *Gaston*, *see* Doc. 17, p. 2, footnote 2, and the Court may take judicial notice of its prior ruling. *See Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000) (a court may take judicial notice of facts from a prior judicial proceeding when there is no dispute as to their accuracy).

6

variety of ways" and it is only its President's "best recollection" in July 2021 that from September 2017 to the end of the year it accessed crash reports from CMPD by gathering hard copies from the department. Significantly, however, Digital Solutions does not say that it provided actual accident reports to clients, but instead says that it takes information from the reports which it puts into an excel spreadsheet format that is its product. *See* Doc. No. 38-1. The Farrin law firm declaration in turn *denies* that it received any spreadsheets from Digital Solutions but instead claims that it prepared its own internal spreadsheets from actual accident reports. *See* Doc. No. 38-2 at ¶ 6. So, ultimately, Plaintiff has failed to establish whether the law firm in fact even had Plaintiff's accident report or, if so, where it came from.

In sum, Plaintiff has failed to allege in the Complaint or otherwise establish that his alleged injury is "traceable" to the City's alleged DPPA violation. Therefore, Plaintiff lacks standing to pursue this action, which must accordingly be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. This Court lacks jurisdiction over this action, which is hereby **DISMISSED**; and

2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 14, 2023

Kenneth D. Bell
United States District Judge

7

Case 3:20-cv-00482-KDB-DSC    Document 64    Filed 03/15/23    Page 7 of 7